# THE SUPREME COURT

OF THE

## STATE OF ILLINOIS,

OF CASES ARGUED AT

### APRIL TERM, 1861, AT OTTAWA.

---

CHARLES R. CARROLL, Appellant, *v.* CHARLES BALLANCE, Appellee.

#### APPEAL FROM PEORIA.

A mortgagee may recover in ejectment against the mortgagor, or those claiming under him, for an installment of the mortgage debt past due, without notice to the party in possession to quit, before action brought.

A lease of premises becomes merged in the fee, when they both unite in the same person.

A mortgagee may proceed against the mortgagor by other methods than by *scire facias* for installments past due; by *sci. fa.* he must wait until all are due.

THIS was an action of ejectment, brought by Ballance against Carroll, in the Circuit Court of Peoria county, to recover the following described real estate: "All of lot three, in block forty-seven of Ballance's Addition to Peoria, together with certain adjoining ground, enclosed and occupied therewith, described and bounded as follows, to wit: Beginning at a point in the south-west line of said lot, 127 feet south-east of the lower line of Water street; thence to a point in Ballance's Avenue, as the same is represented on the recorded plat of said addition, 150 feet below Water street; thence along down said avenue to the Illinois river; thence up said river to the line between lots three and four of said addition; thence along up said line to the place of beginning; excepting so much of said above described real estate as is included in French Claims *No.*

2

*Twenty-nine* and *Thirty-three*, as the same were surveyed and platted by Joseph C. Brown, United States Deputy Surveyor."

The defendant pleaded the general issue, and the cause was tried by jury.

The jury found the defendant guilty, and judgment was entered on the verdict.

On the trial the plaintiff offered in evidence a mortgage executed by William Kellogg, which is as follows:

"This deed, made this fifth day of November, 1855, between William Kellogg of the first part, and Charles Ballance of the second part, (both of Peoria,) witnesseth, that the said party of the first part, for and in consideration of one dollar in hand paid, and the further consideration hereinafter contained, has bargained, sold and conveyed, and by these presents does bargain, sell and convey, unto the said party of the second part, the following described piece of land, to wit:" (Here follows a description of all the lands embraced in the declaration; and said description includes also the two French Claims, excepted from the description in the declaration.) "Together with all the appurtenances thereto belonging, or in any wise appertaining; to have and to hold the said tract of land and appurtenances to the said Ballance, his heirs and assigns, for his and their own proper use and behoof forever. Provided, however, and upon this express condition, that whereas the said Ballance has on this day sold to said Kellogg the above described premises for the sum of forty thousand three hundred and twenty dollars, three thousand of which has been paid in hand, and ten promissory notes have been executed by said Kellogg to said Ballance for the residue, of three thousand seven hundred and thirty-two dollars each, all bearing even date herewith, and the first payable on the first day of April, 1857, and each of the others payable one year later. Now, therefore, if the said Kellogg shall well and truly pay said several promissory notes, according to the tenor and effect thereof, then the above conveyance to be null," etc.

The plaintiff then offered in evidence the ten promissory notes mentioned in the mortgage. The defendant objected, and excepted to the admission of the mortgage and notes in evidence.

The plaintiff called *Henry M. Kellogg* who testified that William Kellogg died November 15th, 1858; that he was in possession of the premises described in the mortgage at the time of his death; that Carroll and he claimed the possession of the premises under the right of William Kellogg; that after Kellogg's death, witness and his brother, Urial, took possession of premises as administrators of William Kellogg; remained in

possession about one year; that they afterwards leased to defendant, Carroll, that portion of said premises that they retained possession of, having been turned out of the possession of one and part of another French Claim lot previous to their leasing to the said defendant; that Carroll had been in possession under the lease from them since November, A. D. 1859; that the lots of which they were dispossessed constituted a portion of the land embraced in the description in the plaintiff's mortgage offered in evidence, but was excepted in the declaration.

A witness, called by plaintiff, identified the land, and stated that the land claimed was included in the mortgage; but that the declaration did not include the French Claims.

It was proved that Ballance told Henry M. Kellogg that he wanted payment of the notes or possession of the property; Kellogg said he was waiting for his brother to come on from New York, and when he arrived, something should be done; that defendant, Carroll, was in possession of the land at the time; heard nothing said at the time about French Claim suits; defendant was told that plaintiff would like to get possession without trouble.

The defendant offered in evidence a lease from Charles Ballance to A. S. Cole, dated 22nd January, 1844, which lease covers a portion of the land described in the mortgage and declaration, and includes all the land covered by the French Claims aforesaid. The lease was for a term of ten years, reserving a yearly rent of fifty dollars, payable the 18th of July in each year, with a right on the part of the lessor to re-enter in case of failure to pay the rent; the lessee to have the privilege of renewal of the lease every five years after its expiration, at a price to be agreed upon, or determined by arbitrators, also of removing buildings and improvements put on by him.

Cole assigned this lease to Sylvanus Thompson.

On the 21st of January, 1854, the lease was renewed to Richard Gregg & Co.

Sylvanus Thompson having died, his executors—Harriet J. Thompson and Richard Gregg—assigned said lease to William Kellogg.

The execution of the lease, assignments, extension, etc., and the death of Thompson previous to September 25th, 1854, and the appointment of Thompson and Gregg as his executors, were admitted by the plaintiff.

The defendant offered in evidence a deed from Charles Ballance to William Kellogg, dated November 5th, 1855.

This deed describes the same land embraced and described in

the plaintiff's mortgage, and includes the French Claims before mentioned.

The defendant next offered in evidence a record of the Circuit Court of the United States for the Northern District of Illinois in Ejectment: *William P. Bryant*, Plaintiff, and *Richard Gregg*, Defendant. For French Claim, No. (29).

The record shows that suit was commenced on the 12th of January, 1854.

That a verdict and judgment were rendered in favor of the plaintiff on the 10th of October, 1857, Charles Ballance, the plaintiff in this suit, approving and acting as attorney for the defendant.

On the 3rd day of May, A. D. 1859, a writ of possession was issued upon this judgment, and on the 5th day of May, A. D. 1859, this writ was executed by delivering possession of said premises to the plaintiff.

The defendant then offered in evidence the record of a judgment and proceedings in the Circuit Court of the United States for the Northern District of Illinois in Ejectment: *Edward P. Tesson*, Plaintiff, and *Richard Gregg*, Defendant. For the undivided half French Claim, No. (33).

The suit was commenced and the declaration served April 7, 1854.

Charles Ballance, the plaintiff in this suit, appeared, pleaded, and tried the cause for the defendant.

On the 21st of July, 1856, there was a verdict and judgment rendered in said cause in favor of the plaintiff.

On the 3rd day of May, A. D. 1859, a writ of possession was issued upon this judgment, and on the 5th day of May, A. D. 1859, this writ was executed by delivering possession of said premises to the plaintiff.

Defendant then offered in evidence a lease of the undivided half of claim (33) from Edward P. Tesson, and a lease of claim (29) from William P. Bryant to William S. Moss, A. C. Harding, James Knox, Urial H. Kellogg, Henry M. Kellogg, each bearing date date May 6th, 1859.

Defendant then offered to prove that Kelloggs and defendant Carroll, since the execution of said leases, had occupied the premises described in the leases under said leases, and that the French claims (33) and (29) recovered in the ejectment suits aforesaid, and from which the defendant in said suits and those claiming under him, had been ousted by and under the writs of possession given in evidence by defendant, constitute a large majority in value of the land described in the plaintiff's deed to William Kellogg, and in the mortgage offered in evidence by

the plaintiff, and that they are worth the sum of $20,000; that Richard Gregg, against whom the recovery was had in said suits, was the plaintiff's tenant at the time said suits were instituted, and that he claimed title, and was defended under the same title that the plaintiff had and claimed, when he sold and conveyed to said William Kellogg by his deed of November 5th, 1855.

The defendant then admitted that the land recovered in the suits of *Bryant* v. *Gregg*, and *Tesson* v. *Gregg*, though embraced in and constituting a portion of the land described in plaintiff's mortgage given in evidence, and in plaintiff's deed to William Kellogg, constituted no portion of the land claimed or described in the plaintiff's amended declaration.

The court, on motion of the plaintiff, excluded all the defendant's evidence offered in the suit, and withdrew the same from the consideration of the jury.

To all of which the defendant excepted.

The court, at the plaintiff's request, instructed the jury as follows:

If the jury believe, from the evidence, that the lands described in the plaintiff's declaration were and are included in and constitute a portion of the land described in the mortgage of William Kellogg offered in evidence; that William Kellogg was at the execution of said mortgage in possession of the premises described in the declaration, and continued in such possession until the time of his death; that immediately after, Henry M. Kellogg and Urial Kellogg, as administrators of said William Kellogg, entered into the possession of said premises described in said declaration, claiming them only under the right, title and interest of said William Kellogg; that afterwards the said Henry M. Kellogg and Urial Kellogg leased said premises described in the declaration to the defendant; and that said defendant was in possession of said premises described in the declaration at the time of the commencement of this suit, and that before the commencement of this suit the said William Kellogg and his legal representatives had made default in the payment of two or more installments of the money secured to be paid by the said mortgage, then the jury must find the defendant guilty of unlawfully withholding the possession of the premises claimed in the declaration from the plaintiff.

If the jury believe, from the evidence, that the only title which the plaintiff in this cause has established to the premises in controversy is by virtue of the mortgage offered in evidence, and a default on the part of the mortgagor and his legal representatives in the payment of a part of the money, secured to be paid by said mortgage, then, if the jury find for the plaintiff

upon the other facts sought to be proved in this cause under the foregoing instructions, they will find that the title, which the plaintiff in this cause has established, is an estate in fee, subject to be defeated, by the performance of the condition of the mortgage offered in evidence.

To which the defendant excepted.

Defendant asked the following instructions, which the court denied:

That no action of ejectment can be maintained upon the mortgage given in evidence, until the whole of the mortgage money has become due and remains unpaid.

That the plaintiff cannot maintain this action on this mortgage unless upon a failure by the mortgagor to pay some installment, and the plaintiff has given notice of a forfeiture for such failure.

That no action of ejectment can be maintained on this mortgage until the conditions of the mortgage have been broken by the mortgagor, and six months' notice has been given him to quit the possession of the premises.

That no such action can be maintained until the conditions of the mortgage have been broken, and reasonable notice to quit has been given by the mortgagee to the mortgagor, or those claiming under him.

That if the jury believe, from the evidence, that the defendant at the date of the service of the declaration in this cause, was in possession of the premises under the lease to Cole, and the assignments of the same, claiming as a tenant and occupying under said lease and assignments, the plaintiff cannot recover in this action unless he has proved that the defendant had reasonable notice to quit the possession prior to the commencement of this suit.

That if the jury believe, from the evidence, that the defendant, or those under whom he claims, have been evicted from the most valuable portion of the premises described in the mortgage, the plaintiff cannot maintain ejectment upon the mortgage for the residue or any portion of the residue of the land described in said mortgage.

That if the jury believe, from the evidence, that the defendant was in possession of the premises at the time of the service of the declaration, as a tenant from year to year under the plaintiff, or under those having or claiming possession under him, the plaintiff cannot recover, unless the plaintiff gave him reasonable notice to quit prior to the commencement of this suit, and that six months is such reasonable notice.

That if the defendant, at the time of the service of the declaration in this case, was in possession of the premises as a

tenant of William Kellogg's executors from year to year, with the plaintiff's knowledge, he was entitled to six months' notice to quit before this action could be maintained against him; and unless this notice has been given, the plaintiff cannot recover.

The defendant excepted to the ruling of the court, denying said instructions.

After the verdict, the defendant moved for a new trial, because: the verdict was against the law and evidence; because the court excluded the evidence offered by the defendant; because the court permitted the plaintiff to give improper evidence; and because the court gave the instructions asked by plaintiff, and refused those asked by defendant. Which motion was overruled, and defendant excepted.

The errors assigned are: excluding defendant's evidence; admitting plaintiff's evidence; giving the plaintiff's and refusing the defendant's instructions; and overruling the defendant's motion for a new trial.

N. H. PURPLE, for Appellee.

C. BALLANCE, in person.

BREESE, J. The questions presented by this record are, can a mortgagee, the mortgage debt being payable by installments for which separate notes are given, recover the mortgaged premises in ejectment against the mortgagor, or those claiming under him, when one or more notes are due and unpaid, and without notice to quit to the party in possession, before action brought?

In England, and in many of the American States, it is understood that the ordinary mortgage deed conveys the fee in the land to the mortgagee, and under it, he may oust the mortgagor immediately on the execution and delivery of the mortgage, without waiting for the period fixed for the performance of the condition. Coote on Mortgages, 339; *Blaney* v. *Bearce*, 2 Greenl. R. 132; *Brown* v. *Cramer*, 1 N. H. 169; *Hobart* v. *Sanborn*, 13 ib. 226; *Northampton Paper Mills* v. *Ames*, 8 Met. 1.

And this right is fully recognized by courts of equity, although liable to be defeated, at any moment, in those courts, by the payment of the debt. It has been held, that this right cannot be restrained by a parol agreement that the mortgagor shall be allowed to remain in possession until forfeiture, for the reason, that such an agreement is inconsistent both with the terms of the deed, and the provision of the statute of frauds. *Colman* v. *Packard*, 16 Mass. 39.

So strict are the principles which obtain in such cases, and

constantly applied in some States, that it is held that the rights of the mortgagee to the possession, cannot be defeated by the tender, or even by the payment of the debt, after the time fixed for its payment; for, by the old and rigid rule of covenants, the condition not having been performed at the day, the right of the mortgagor was gone at law, and the only redress for him was in equity.

By the common law, as enforced in the English courts, on the execution of the mortgage, the mortgagor becomes the equitable owner, the mortgagee the legal owner of the land, and they so remain respectively, until the land is redeemed or the equity foreclosed. As a consequence of this results the doctrine that the mortgagee may maintain ejectment against the mortgagor before condition broken, and turn him out of possession. To avoid this, most English mortgages contain a clause, that until default made, the mortgagor, his heirs, etc., may hold and enjoy the land, and receive the profits, without interruption by the mortgagee or his heirs.

The interest of the mortgagee is regarded there, and in many of the States, as an estate, and may be conveyed by him to third persons by any of the usual modes of conveyance. Being a mortgagee in fee, it must follow that he has the legal title to the estate, and consequently the same right to transfer it by deed, that he has to convey by deed the legal title of any other real estate, subject only to the right of redemption existing in the mortgagor. *Givan* v. *Doe ex dem. Tout*, 7 Blackford, 210.

In other States, holding the mortgagor to be the owner of the land, not only as against third persons, but as against the mortgagee, it is decided, that a conveyance by the mortgagee, intended to pass the interest of the mortgagee as an estate, and not as a security merely for a debt due, would be wholly inoperative. *Wilson* v. *Thorp*, 2 Cowen, 145; *Jackson ex dem. Titus et al.* v. *Myers*, 11 Wendell, 533.

In *Jackson ex dem. Curtis* v. *Bronson*, 19 Johnson, 325, which was an ejectment by the mortgagor against the assignee of the mortgagee, the court held, that the mortgagee had a mere chattel interest, and the mortgagor must be considered the proprietor of the freehold. The mortgage is deemed a mere incident to the bond, or as security for the debt; and the assignment of the interest of the mortgagee in the land is a nullity.

In *Runyon* v. *Mersereau*, 11 ib. 534, it was held that the mortgagor, or a purchaser of the equity of redemption, may maintain trespass against the mortgagee, or against a person cutting wood under his license off the mortgaged premises. The freehold is in the mortgagor, and in an action of trespass by a mortgagor against a mortgagee, if the defendant pleads *liberum*

*tenementum,* the plaintiff may reply that the freehold is in himself.

In *Gardner* v. *Hart,* 3 Denio, 232, the court said, a mortgage creates a specific lien on the land mortgaged, the same as a judgment duly docketed creates a general lien on the land of the judgment debtor. But the mortgagee, as such, has no title to the land mortgaged; he has neither *jus in re* nor *ad rem.,* but a mere security for his debt, the title to the land, notwithstanding the mortgage, remaining in the mortgagor.

This court has held, in accordance with the rulings of the English courts of common law jurisdiction, that as an incident to this ownership in the mortgagee, he can enter before condition broken or bring ejectment. He is considered the owner of the fee, having the *jus in re* as well as *ad rem.,* and being so, is entitled to all the rights and remedies which the law gives to such an owner. *Delahay* v. *Clement,* 3 Scam. 202; *Vansant* v. *Allmon,* 23 Ill. 33.

There seems, to one member of this court at least, great propriety in a distinction which might be made, though the books do not recognize it, between a mortgage executed for money loaned, or for the performance of some other obligation, where the consideration passes from a stranger to the owner of the land mortgaged, and a mortgage executed to secure the payment of the purchase money of the land itself, which are quite as common in the transactions of the day as those given on the actual loan of money. In the first class of cases, a mortgage may properly be regarded as an incident, or security merely for the repayment of the money actually loaned, the lender never having had an interest in the land mortgaged as security.

A mortgage of the other description, given to secure the payment of the purchase money of the land itself, ought to be regarded as something more than a mere security for money loaned, no money being in fact loaned. The vendor of land, by his deed, clothes his grantee with power to enter and take possession of the land—to grant it away to strangers—to deprive the vendor of all use of it. The mortgage is executed to secure the vendor in the purchase money, on the promise of which, at a certain day, he surrenders the possession to the mortgagor. Now, different considerations operate upon the parties in these cases. In the first, the mortgagee only stipulates for a prompt return of his money—his only consideration is, that the security shall be ample, and it is, in practical life, rarely if ever understood by the parties to such a mortgage, to pass the title in fee of the land to the mortgagee, so as to vest in him the power to enter on condition broken, or bring ejectment and turn the mortgagor out of possession. The debt may be very trifling in

comparison to the value of the land mortgaged, and so long as its ultimate payment is fully secured, such mortgagee should be content with the usual remedies allowed him by the law—to proceed by *scire facias* under the statute, or by bill in equity for a strict foreclosure, or for a foreclosure and sale, or by suit on the note, and thus receive the full benefit of what the parties intended should be security. In justice and equity his principal right is to his money only.

In the other class of cases, and they are perhaps the most numerous in this State, something more than mere security must be in contemplation of both parties. The title to the fee ought not to be held as having passed absolutely out of the vendor. It is in him when he sells, and should be considered as passing out of him, only by the payment of the purchase money. There would seem to be great propriety in conceding to such a mortgagee all the rights the true owner of the fee can exercise—the right of entry, or the action of ejectment on condition broken, and not before. It is his estate, the title to which he has never in fact parted with, except upon a condition which has not been performed. It is then but sheer justice that the possession should be restored to him.

But the law makes no distinction, and we can make none.

The next question is, the mortgagor being in possession, is he entitled to notice to quit before suit brought?

This depends on the relation subsisting between the mortgagee and mortgagor, and this has never yet been specially defined or authoritatively determined. The appellant's counsel contends that he is a tenant from year to year. We think no court has gone so far as to say that. The relation is admitted to be *sui generis* and altogether anomalous. What the true relation is, has been much discussed. He has been called tenant at will, *quasi* tenant at will, tenant at sufferance, agent, receiver, yet wanting in some of the essentials of each. He has never been considered a tenant from year to year, except as it may be so inferred from the cases cited from New York, *Jackson* v. *Loughhead*, 2 Johns. 75, especially, which is the leading case. Judge Livingston, who delivered the opinion in that case, said, that it was not deemed necessary to ascertain what relation the mortgagor held to the mortgagee, whether as tenant at sufferance or at will, or from year to year. That as a rule of practice, the court would require in such cases, a notice of six months; and that decision has been followed since. *Bennet* v. *Lampson*, 17 ib. 300.

The doctrine in England is, as we find it declared by Lord Mansfield, in the case of *Keech, Lessee of Warne*, v. *Hall*, Douglass, 21, that when the mortgagor is left in possession, the true

inference to be drawn is, an agreement that he shall possess the premises at will in the *strictest* sense, and therefore no notice is ever given him to quit, and he is not even entitled to reap the crop as other tenants at will are, because all is liable to the debt; on payment of which the mortgagee's title ceases.

And in *Thunder on the demise of Weaver* v. *Belcher*, 3 East, 221 [449], Lord Ellenborough held that a mortgagor was no more than a tenant at sufferance, not entitled to notice to quit. In most of the American courts this doctrine is recognized. *Brown* v. *Cram*, 1 N. H. 169; *Newell* v. *Davis*, 3 Mass. 152; *Colman* v. *Packard*, 16 ib. 39; *Reed* v. *Davis*, 4 Pick. 216; *Blaney* v. *Bearce*, 2 Greenleaf R. 132; *Welch* v. *Adams*, 1 Metcalf, 494; *Shute* v. *Greaves*, 7 Blackford, 1; *Lyman* v. *Mower*, 6 Vermont, 345.

One good criterion of the nature of a mortgagor's interest is found in the case of *Keech* v. *Hall*, and recognized in the case of *Jones* v. *Thomas*, 8 Blackford, 428, and that is, that the mortgagor cannot take the emblements, even when expelled, without warning by the mortgagee, as a tenant at will could. This being so, he cannot be regarded as a tenant at will, and the decisions which put his possession on that footing cannot be correct, for although the mortgagor holds the premises by the sufferance of the mortgagee, yet he does not hold *of* him, and as the peculiar relation of tenure is not created, the mortgagor cannot properly be described as a tenant at will. *Mayo* v. *Fletcher*, 14 Pickering, 530.

The point has never come directly before this court for a decision. We are inclined to the opinion that there is really no tenancy of any kind created by the mortgage. The mortgagee may consider the mortgagor as his tenant for some purposes, or a trespasser, or person holding without right. It is an inference from the facts and circumstances. He is not such a tenant as to be entitled to a notice to quit. The only case decided by this court bearing on this point, is the case of *Prentice* v. *Wilson*, 14 Ill. 91.

It is there held as a general principle, where a party acquires the possession of land under an executory contract to purchase, the vendor cannot maintain ejectment against him, until he has demanded possession or given him notice to quit, but if he repudiates the contract under which he obtained the possession, or fails to comply with its terms, the seller is at liberty to treat the contract as rescinded, and regain the possession by an action of ejectment, a demand of possession or notice to quit being, in such case, unnecessary.

As to the other points made by the appellant, that he was in possession under a lease theretofore executed by the appellee,

it appeared in evidence that the premises were, many years previous to the suit, leased by the appellee to one Cole, who assigned to Thompson, and he to one Gregg, and he to Kellogg, who afterwards purchased the fee and executed the mortgage. The lease then being owned by Kellogg, merged in the deed of the fee to him, and no person thereafter, could claim under that lease,—it was extinct.

As to the fourth point, that the appellee had violated his contract and broken his covenants, this is attempted to be made out, by showing that portions of the land conveyed to Kellogg, and included in the same mortgage, were recovered by other adverse parties in ejectment in the U. S. Circuit Court. This recovery did not affect the land sued for, it was neither part or parcel of it, and has not any connection with these premises for which this suit was brought, nor does it appear from the evidence that there was any complaint made on that account, when Webb, as agent of appellee, demanded payment of the notes.

The statute to which appellant refers under the first point he makes, that a mortgage cannot be foreclosed until the last installment is due, means only, that the mortgagee cannot resort to the proceeding by *scire facias*, until the last installment is due. It does not debar him from resorting to other remedies. He may proceed personally against the debtor, on the note, and subject his general property to the judgment; or he may bring ejectment on condition broken, or make peaceable entry, or file a bill in chancery for a strict foreclosure, for a foreclosure and sale, or if he prefers it, sue out a *scire facias*. The remedies are various and concurrent or successive, as may be deemed proper.

We think it is settled that a mortgagee, may maintain ejectment, on condition broken, without notice to quit, and that the condition is broken when one or more installments are due and unpaid; because, the condition being an entirety, it is indivisible, and a failure to pay any part of the debt is a breach of the condition.

On the other point made by appellant, the presumption must obtain, inasmuch as the deed and mortgage bear one and the same date, that they are but one transaction.

The judgment must be affirmed.

*Judgment affirmed.*