## Case No. 11,824.

### RIGGS v. COLLINS. ·

[2 Biss. 268; [1] 2 Chi. Leg. News, 234.]

Circuit Court, N. D. Illinois. April, 1870. [2]

DECREE—RECITALS IN—PROCESS— CONTRADICTION OF RECORD—THIRD PARTIES.

1. The recital in a decree of foreclosure that a defendant had been duly served with process is, after the lapse of time, conclusive, unless there is something in the record itself showing that such recital is not or could not be true.

2. Proof outside of the record is not admissible to contradict it, where that proof would affect the rights of third persons acquired under the decree of the court

Ejectment for section 26, T. 34 N., range 7 east, in the county of Grundy, state of Illinois. The suit was commenced March 13, 1867. By agreement of parties a jury was waived, and the law and facts were submitted to the court.

Dent & Black, for plaintiff.

The adverse title asserted by the defendants has no force or credit because it is hostile to the decree of foreclosure, to which Josiah S. Breese, through whom they claim, was a party, and by which he and they are bound. On this point, see Grignon v. Astor,

[3] [Reported by Hon. William Cranch, Chief Judge.]

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

[2] [Affirmed in 14 Wall. (81 U. S.) 491.]

2 How. [43 U. S.] 319, 340, 341; Sargeant v. State Bank of Indiana, 12 How. [53 U. S.] 371. The deed of Russell to Breese was void as to the United States, because it was not recorded in La Salle county, where the land lay, when Russell's mortgage to the United States was recorded there, and because of not having been recorded in Grundy county until June 17, 1861, twenty-four years after its execution; and when the mortgage was recorded in La Salle county, the deed not being recorded the mortgage acquired a priority under the statutes of the state. The act of January 13, 1833 (pages 488, 489, §§ 2, 5, Purple's Real-Estate Statutes), provides thus: Section 2 required that after the first day of June, then next, all deeds and title papers should be recorded in the county where the lands were situated. Section 5 enacted that from and after the first day of August then next, all such deeds and title papers should take effect, and be in force from and after the filing the same for record, and not before, as to all creditors and subsequent purchasers without notice; and further, that all such deeds and title papers should be adjudged void as to all such creditors and subsequent purchasers without notice, until the same should be filed for record in the county where the land should lie. The statutes are now substantially the same, but the revision of the laws in 1845 changed the phraseology slightly, and reference is therefore made to the statute as it stood when the rights of the United States were acquired. The United States in taking a mortgage became entitled to be regarded as a purchaser, and could claim the protection of the statute; for a mortgagee is a purchaser within the statute of frauds. 2 White & T. Lead. Cas. Eq. p. 53, notes to Basset v. Nosworthy; Lancaster v. Dolan, 1 Rawle, 245; Chapman v. Emery, Cowp. 280. The United States having then no notice in fact or constructively of Breese having given a prior deed for this land, were within the letter and spirit of the statute entitled to have such prior deed adjudged to be void, and could and did obtain a priority over it by having the mortgage recorded in La Salle county, as was done on the 11th of May, 1838. In that situation of affairs, the United States could, after condition broken, have sustained ejectment against Breese, the grantee in such void deed, if he had entered into possession; and the right to maintain the action would not have been in any way dependent on the foreclosure of the mortgage. Carroll v. Ballance, 26 Ill. 15. It is not correct to say that Breese was a necessary party to a suit for the foreclosure of the mortgage. Frye v. Bank of Illinois, 11 Ill. 367; Eagle Fire Co. v. Lent, 6 Paige, 635. The recording in Cook and Will counties of the deed from Russell to Breese cannot be held as constructive or actual notice to Corcoran, the purchaser from the United States. He was not required to examine the records of any county, save that in which he was

about to buy. The statute does not extend the effect of the record of a deed in one or more counties so as to make it notice in regard to land situated in another county than that in which such registry is made. Harper v. Tapley, 35 Miss. 506; Taylor v. McDonald's Heirs, 2 Bibb. 420. Corcoran had a right to repose on the decree of foreclosure, and he was not bound to look beyond that. Buckmaster v. Carlin, 3 Scam. 104, 107, 108; Voorhees v. Bank of U. S., 10 Pet. [35 U. S.] 477. A purchaser had a right to presume that the title of the United States was complete; and the law would not permit him to be disturbed without clear and sufficient proof of fraud on his part. Story, Eq. Jur. § 404; Wheaton v. Dyer, 15 Conn. 311. And in such cases the fraud must be very clearly proved. Norcross v. Widgery, 2 Mass. 509. The effect, then, of the deed to Corcoran being recorded before that from Russell to Breese, was to give Mr. Corcoran a good and indefeasible estate as against Breese. Flynt v. Arnold, 2 Metc. (Mass.) 623; Dunlap v. Wilson, 32 Ill. 517–523. There can be no doubt that Corcoran acquired all the rights of the United States as to this land, even more effectually and potentially in form than if the whole mortgage had been assigned to him. 1 Washb. Real. Prop. 520; Wyman v. Hooper, 2 Gray, 141–146; Givan v. Doe, 7 Blackf. 210; Tallman v. Ely, 6 Wis. 244. An attempt to avoid a mortgage by offering money as an answer to an action of ejectment is a novelty so discordant from authority that it can receive no judicial favor. After condition broken, the mortgagor's rights are purely equitable, and he can obtain relief only in equity. Parsons v. Welles, 17 Mass. 419; Hill v. Payson, 3 Mass. 559; King v. State Mut. Fire Ins. Co., 7 Cush. 1; Carroll v. Ballance, 26 Ill. 15.

B. C. Cook and Samuel W. Fuller, for defendants.

Breese being the owner and holder of the equity of redemption in the mortgaged premises, no effectual foreclosure of the mortgage could be made without his being made a party defendant to the foreclosure, and subjected to its jurisdiction. Reed v. Marble, 10 Paige, 409; Watson v. Spence, 20 Wend. 260; Fuller v. Van Geesen, 4 Hill, 171; Ohling v. Luitjens, 32 Ill. 30. It does not appear, from the transcript of the proceedings in the foreclosure suit, certainly not expressly nor by fair legal intendment or construction, that Breese was served with process or otherwise brought into court in that suit; but taking the record itself, and Paine's testimony, it affirmatively appears that he was not, and could not have been served with process, nor did he enter his appearance. The summons shows explicitly that it was not served upon Breese. The record taken as a whole shows that but one summons was issued. From outside proof it is shown that service could not have been made upon

him, and hence the recital of the court that "the defendants had been served with process" should be construed as including only those defendants who appear to have been served by the officer's return. If the summons was not preserved in the record with the return of the officer, showing who were and who were not served, then the recital of service in the decree would be prima facie evidence that all the defendants were served. Comstock v. Crawford, 3 Wall. [70 U. S.] 403; Secrist v. Green, Id. 744; Sibley v. Waffle, 16 N. Y. 180; Tunis v. Withrow, 10 Iowa, 308; Harris v. Hardeman, 14 How. [55 U. S.] 334; Lessee of Walden v. Craig's Heirs, 14 Pet. [39 U. S.] 147; Bodurtha v. Goodrich, 3 Gray, 508; Bloom v. Burdick, 1 Hill, 130; Clark v. Thompson, 47 Ill. 25; Pardon v. Dwire, 23 Ill. 572. The general rule is, that in suits upon judgments rendered in other states, the officer's return of service, or the recital of an appearance by the defendant, may be contradicted by the defendant. Carleton v. Bickford, 13 Gray, 591; D'Arcy v. Ketchum, 11 How. [52 U. S.] 165; Bimeler v. Dawson, 4 Scam. 536; Welch v. Sykes, 3 Gilman, 197; Elliot v. Peirsol, 1 Pet. [26 U. S.] 340; Goudy v. Hall, 30 Ill. 116; Ferguson v. Mahon, 11 Adol. & E. 179; Bonaker v. Evans, 16 Q. B. 163; Capel v. Child, 2 Cromp. & J. 558. The rule is not even restricted or qualified by anything decided in Thompson v. Tolmie, 2 Pet. [27 U. S.] 168. The United States was a mortgagee, and if the equity of redemption was not foreclosed by bringing Breese the owner and holder of it, into court, they had no other title, and the deed made by the solicitor of the treasury to Corcoran, not being accompanied by an assignment of the whole or any part of the mortgage debt, passed to him no title or estate in the mortgaged premises. It is important to consider that the mortgage debt was a single sum, evidenced by a single bond, although payable in three annual installments. So that this is not the case of an ejectment brought by the assignee of a part or the whole of the mortgage debt, but that of a deed, made by the mortgagee to a stranger, of a part of the mortgaged premises, without an assignment of the debt, or any part of it. This rule is settled in Hutchins v. King, 1 Wall. [68 U. S.] 58; 2 Washb. Real Prop. (Ed. 1868) 114, 115; Peters v. Jamestown Bridge, 5 Cal. 334; Nagle v. Macy, 9 Cal. 426; Willis v. Vallette, 4 Metc. (Ky.) 195, 196; Ladue v. Detroit & M. R. Co., 13 Mich. 395. "The mortgagor is now regarded as the real owner of the land, for all beneficial purposes, subject to the charge of the re-payment of the money." Fitch v. Pinckard, 4 Scam. 83. The supreme court of Illinois has shown a determined purpose to uphold all the rights of mortgagees, and the assignees of mortgage debts, so far as necessary to protect the security, and while the precise question now under discussion has not been decided in

that state, yet the opinions of the court in Moore v. Titman, 44 Ill. 367, and Griffin v. Marine Co. of Chicago, 52 Ill. 130, stop far short of holding that the transfer of a mortgage, without an assignment of the mortgage debt will pass the legal title to the mortgaged premises. The point is, that Breese became the owner of the equity of redemption in the La Salle county lands, as against the United States, which was not foreclosed; and the deed from the United States passed no title to the lands in controversy to the grantee, under whom the plaintiff claims.

DRUMMOND, Circuit Judge. This land was purchased of the United States, by J. B. F. Russell, in 1836, and although the patent was not issued until 1839, yet, under our law, between the date of the purchase and the issuing of the patent, he is treated as the owner of the land, as against all persons except the United States. On the 13th of May, 1837, Russell, being thus the owner of the land in controversy by purchase, conveyed it to Josiah S. Breese, but the deed was not recorded in the county of La Salle, where the land was then located, and was not, in point of fact, recorded in the county where the land was situate, until the 7th of June, 1861, when it was recorded in the county of Grundy, where the land then was. On the 21st of December, 1837, J. B. F. Russell made a mortgage of the land in controversy, including various other tracts, to Henry P. Gilpin, the solicitor of the treasury, in trust for the United States, and in May, 1838, this mortgage was duly recorded in the county of La Salle, where the land was then located. Although Russell had previously conveyed the land to Breese, as that conveyance was not recorded in the recorder's office of the proper county at the time the mortgage was made to the United States, and as there is no evidence tending to show that the United States then had any notice of the existence of this prior deed to Breese, the mortgage conveyed a good title to the United States, as mortgagee of the land, under our registry laws.

The amount for which this land and the other tracts were mortgaged to the United States was more than $50,000. On the 1st day of September, 1840, a bill was filed in the circuit court of the United States for the district of Illinois, by the United States, to foreclose the mortgage. Various persons besides Russell were made parties defendant to the bill, the averment being that Breese and others, naming them, had "some interest in the premises, as judgment creditors, or otherwise." "The premises," as I have already stated, included several tracts of land, and this section 26 among others. A subpœna, or, as our local law terms it, a summons, was issued upon the filing of this bill, on the 1st day of September, 1840, and made returnable on the 1st Monday of the December-

ber term of that year. It included, as defendants, Breese and others. The return upon the summons states that it was served upon several of the defendants—less than all --and the return concludes by stating the others were not found within the district; and among those not found was Breese, the party to whom Russell had conveyed the land in controversy, in 1837. Although there is no evidence that the government had any notice of the existence of this prior deed at the time that the mortgage was made and delivered, it is clear that when the bill was filed it had some knowledge of the claim of Breese. True, the allegation in the bill is of the most general character, and does not distinctly set forth what the interest was, or in what tract of land among all those named in the mortgage. But still, the attention of the government was called to the fact that Breese had some interest in the land, and therefore it might be said that there was a claim stated which it would be ificumbent on any party subsequently acquiring a right, to trace up and ascertain its character.

In the bill of costs taxed in the case, it seems that there are costs taxed only for one writ. Some evidence was introduced, which was received, subject to objection, to the effect that Breese was not, at the time the summons was issued and returned, an inhabitant of the state of Illinois, but that he had, prior to that time, removed elsewhere. This is all there is in relation to this matter, up to the time when the decree of foreclosure was rendered in June, 1841. At that time the title of the suit was entered on the record, including the names of all the defendants, and that of Breese among others. The decree declared that the defendants had been duly served with process. The precise language in which the entry is made is as follows: "This day came the said plaintiffs, by their solicitor, and the said defendants having been duly served with process; and having failed to appear, as by the within writ they were commanded, and having failed to answer the complainants' said bill of complaint, herein filed, although more than three calendar months have elapsed and passed by since the return of the writ aforesaid, upon them executed." And then follows the decree. The court directed a reference to a master, under which a report was made, and then an order of sale of the mortgaged premises, at which sale the section in controversy was struck off to the United States for the sum of $641. The land was sold in separate parcels. After the sale, and after a deed from the master was executed to the United States, the latter, on the 28th of December, 1847, through the solicitor of the treasury, who was the authorized agent of the government for that purpose, under the act of 1830, conveyed this section of land and other tracts to W. W. Corcoran, and the deed, together with the-

deed from the master to the United States, was duly recorded in the county where the land was situated; the master's deed in April, 1843, and the other in July, 1848. W. W. Corcoran, in 1866, conveyed this section of land to the plaintiff, and this is the title of the plaintiff. The defendant claims title through the unrecorded deed of Josiah S. Breese.

The questions in the case appear to be: First, whether it will be presumed upon the face of the decree and the record, that the averment contained in the decree, that service of process was made on Breese, is true; and if not, secondly, what was the effect on the title of the United States, or of Corcoran, of the allegation in the bill that Breese had some interest in the land.

I will consider this last question first. Admitting, therefore, that Breese was not a party to the proceedings to foreclose the mortgage; that is to say, although named, he was not served with process, then he would not be bound by the decree, and his equity of redemption would be a subsisting equity, unless it has been lost by something independent of the proceedings in the foreclosure suit; then, that being so, what would be the position of the United States, or of a purchaser from the United States. I apprehend it would be this: Although at the time of the decree of foreclosure and of the filing of the bill, it may be said that the government had knowledge of a claim of Breese to the premises; still, as already stated, when the mortgage was made, there was no notice of such a claim, and therefore it would be a valid mortgage of this land, under our registry law. Then, when the deed was made by the solicitor of the treasury, under the circumstances in evidence, of this tract of land, to Mr. Corcoran, it would be by a mortgagee who was the purchaser at a sale the purpose of which was to foreclose the mortgage and deprive Breese of his equity of redemption, and whether this was effectual or not, as the government was a mortgagee, and would, as such, hold the legal title, the purchaser, under the decree, and from the mortgagee, would also be a mortgagee, and would thus represent pro tanto the debt which the mortgage was given to secure; and the rule which. it is claimed, sometimes prevails, that the mortgaged premises cannot be transferred or conveyed irrespective of the debt which the mortgage was given to secure, would hardly apply. It would have to be treated, I think, substantially as though it were a transfer quoad hoc of the debt which the mortgage was given to secure, and therefore the purchaser from the United States would also be the mortgagee, and would have the legal title to the land, as the United States had, and so, default having been made in the payment of the sum due on the mortgage, would have the right to maintain an action of ejectment.

As I understand, this is the effect of the decision of the supreme court of this state, made in the case of Carroll v. Ballance, 26 Ill. 9. But, however this may be, I am of the opinion that as the case now stands, as to the first question named, it must be considered that the equity of redemption, if that was the interest which Breese had, and was referred to in the bill, is gone under the foreclosure suit, because Breese must be regarded as one served with process.

It is thirty years, very nearly, since this decree was rendered. Breese was a party to the bill. The decree recites that service was had upon him—that is, it names all the defendants, and declares the defendants were duly served with process, and after the lapse of so much time, it seems to me that the averment in the decree must stand as true, unless there is something upon the face of the record itself which shows that such was not the fact at the time it was made. There are some decisions of the supreme court of our own state, perhaps, which go the length of declaring where a record recites that process was served, when it clearly appears it was not, and could not have been, that when the question comes up even collaterally, the court will not regard as conclusive the averment of the service of process. A case relied upon on the part of the defendant was that of Goudy v. Hall, 30 Ill. 109. But, although the court says in that case that the judgment recited that the process was served, when it appeared it was not, it would not be treated as binding, yet that statement was not necessary to the decision of the case, because the court held that there was nothing in the proof inconsistent with the recital in the judgment that due notice had been given. But this case, even if we admit the correctness of such decisions or dicta, is not within any principle there decided. For it is possible that another writ issued from this court, returnable to the first Monday of June, 1841. We know that the process returnable to the first Monday of December, 1840, was not served on Breese; we do not know that another process was not issued, and served on him, and therefore he might have been duly in court on the first Monday of June, 1841. This seems to be a sound principle— that in a collateral issue, if any proof whatever, either in the case or out of it, is to be admitted, to contradict the decree, alleging due service of process, that proof must show that the averment could not be true. And this case is not brought within that rule, for it is quite possible that another summons was issued, served and returned, and that it is lost or mislaid. We must presume, in the absence of clear proof to the contrary, that the averment that Breese was duly served with process was true, and especially after the lapse of so many years. But if we assume this to be so, prima facie, the decision of Rivard v. Gardner, 39 Ill. 125, is to the effect that proof, outside of the record, is not admissible to contradict it, where that proof

would affect the rights of third persons, acquired under the judgment or decree of the court. It is admitted, in that case, that there is some conflict in the authorities; but the language of the court is: "We entertain no doubt that the rule forbidding the return to be contradicted, as against third persons who have acquired rights under the judgment of the court, rests upon the sounder reason. The importance of the rule, as a question of public policy, upon which the principles of law are designed to rest, is most apparent. The public should be permitted to purchase property sold under the judgment or decree of a court, without the apprehension that at some distant day their titles may be divested by parol testimony, that the return of the officer upon which such judgment was rendered was falsely made." It is true that the question in that case was as to the return of the officer; but if we concede the effect to be given by the recital in the decree, then the principle is precisely the same in this case.

It seems to me that the case of Miller v. Handy, 40 Ill. 448, decides a principle applicable to this case. There the question arose on a judgment on a scire facias, to foreclose a mortgage. By our statute, when there is no service of the scire facias on the party to be affected by it, it requires what is termed two nihils; and in that case the judgment of the court recited that there had been due service, as prescribed by law, in order to foreclose the rights of the mortgagors. But only one writ was found in the case upon which the return of nihil was made, and yet the court, where the question came up collaterally, and the rights of third persons were to be affected, held that it would presume in favor of the recital in the judgment, that there was another writ, which had been properly returned. And why? Because there had intervened one or more terms between the date of the first writ and the judgment of foreclosure, when there might have been another writ issued and returned. "We are to presume," the court says, "on the faith of the finding of the court, that such was the fact."—that is to say, that the averment in the judgment was true.—"that there was time and opportunity for it, and it is stated as a fact found by the court, that two nihils had been returned." Is it just or consonant with right? Is it protective of the interests of the public that the mere absence from the files of one of these writs shall rebut the presumption upon a prior finding of the court, at the very incipiency of the judgment, and that, too, after the lapse of more than twenty-five years? The necessity of such a presumption is fully discussed in the case of Reddick v. State Bank, 27 Ill. 148. We there said: "It does not seem reasonable to require a party who has purchased land under the judgment of a court of competent jurisdiction, bona fide, and with no notice of any such defects as the absence of a summons or notice, to be put in jeopardy of his title, or be required to take

the risk of the loss or abstraction of a loose paper from the files, when the decree or judgment of the court recites the fact that process was duly served, or the required notice duly given. These are facts lying at the very threshold of the case, and on which the court is required to be informed and to pronounce, just as much as upon any other fact in the cause. * * * We cannot perceive any reason why the rights of parties depending upon these preliminary facts, should not be as secure, unless impeached by the record itself, as upon any other adjudicated facts in the cause, especially after the lapse of more than a quarter of a century."

Now, this reasoning applies with peculiar force to this case. Here is a party wishing to make a purchase of a tract of land. It is offered for sale by the government of the United States, under a title resting upon a mortgage made in 1837. There is nothing whatever upon the files of the record in the proper county, where the land is situated, which affects in any way the validity of this mortgage. There is nothing which affects the sale made under the decree of foreclosure to the United States of this tract of land, except what is recited in the bill, that Breese had some interest in the land as a judgment creditor or otherwise. Breese is a party to the bill of foreclosure. The decree of foreclosure recites that process was duly served upon him. Is not that, and ought not that to be, satisfactory evidence to the party seeking to make the purchase, that he has obtained a good title under the mortgage, as against the mortgagor, and so against all parties whom the decree recites were then served with process? I think that question must be answered in the affirmative, if there is nothing in the record itself which shows that the averment in the decree could not be true. It is only in that way, as it seems to me, that we can give stability to the decrees and judgments of courts, and to titles obtained under them, especially after the lapse of so many years.

Now, in this case, it may be said that Breese obtained a good title, that it failed on the technical ground of want of record, and that, in equity, his claim is valid. That is one view of the case, undoubtedly; but there is another equally strong, and even stronger, as a matter of mere equity, growing out of the foreclosure suit, and averment of service of process upon Breese and the bona fide purchase by Corcoran of the title of the United States obtained under this decree of foreclosure. There can be no question of the entire good faith of Corcoran in making this purchase, of his ignorance of any claim whatever on the part of Breese to this land, unless upon the constructive notice which arises on this averment in the bill.

The proof shows that under this title thus obtained, taxes were paid upon this land for seventeen years, from 1848 to 1864, inclusive. Then the equity, it seems to me, of the plain-

tiff's title is as strong as any supposed equity on the part of the defendant. The issue and judgment of the court will therefore be for the plaintiff.

NOTE. This case was on appeal, together with a like case argued therewith, affirmed in the supreme court in a short opinion simply holding that to redeem property sold under a mortgage for less than the mortgage debt, it is necessary to tender not simply the amount of the sale, but the whole mortgage debt: and that the redemption money is to be distributed between the mortgagee and the purchaser in equitable proportions, so as to reimburse the latter his purchase money, and pay the former the balance of his debt. 14 Wall. [81 U. S.] 493.

The other questions presented by record seem to have been ruled by the supreme court in favor of Riggs, as appears from Dirst v. Morris, 14 Wall. [81 U. S.] 484; in the opinion in which case the fact that the government agents, when they took the mortgage from Russell, had no notice of his unrecorded deed to Breese, was held sufficient to entitle the mortgagee or assignees to possession of the land on non payment of the mortgage debt at maturity.