*892 OPINION.
TRAMmell :
The sole issue in this proceeding is whether the profit realized by the petitioner from a certain real estate transaction in 1923, under the circumstances detailed in our findings of .fact, is taxable as ordinary income or as capital gain.
The Revenue Act of 1921, in section 206 (a), provides that:
(1) The term “ capital gain ” means taxable gain from the sale or exchange of capital assets consummated after December 31, 1921.
ifc * * ¡ft * ❖ #
(6) The term “capital assets” as used in this section means property acquired and held by the taxpayer for profit or investment for more than two years (whether or not connected with his trade or business) * * *.
*893 The respondent contends that when Marx, acting for himself and the petitioner, purchased the fee title in 1928 to the real estate in question, the leasehold estate theretofore acquired in 1914 by Marx and the petitioner merged in the greater estate; hence, that what they sold to Rosen in 1923 was the fee and not the leasehold estate which had then become merged therein; that since they sold the fee title during the same year in which it was acquired by them, it did not constitute a capital asset within the meaning of the statute above quoted, and that the profit derived from such sale, not being capital net gain, is taxable as ordinary income. The deficiency in controversy was determined by the respondent on this theory.
The petitioner takes the position that the fee title was purchased by Marx for Rosen and was paid for with Rosen’s money, which he had obtained as a loan to be secured by a mortgage on the property being purchased; that, therefore, the fee title never at any time belonged to Marx and the petitioner, and could not have been sold by them, since a resulting trust arose in favor of Rosen at the moment Marx took the title for him, and that Marx was merely the conduit through which the title was passed to Rosen. On this theory, the profit derived from the transaction by Marx and the petitioner could only have resulted from the sale of their leasehold estate, which constituted property held by them for more than two years. Said profit would, therefore, constitute capital net gain and be taxable as such.
The action of the respondent, in our opinion, must be approved. While the petitioner testified at the hearing that the fee title was purchased by Marx for Rosen, “ with Rosen’s money,” which “ money all came out of his (Rosen’s) loan,” it is not at all clear that the money used to purchase the fee was in any legal sense Rosen’s money at that time, and we are unable so to find the fact to be.
It appears that Rosen had made some sort of arrangement to procure a loan from a trust or investment company of which the petitioner was vice president, to be secured by a mortgage on the property being purchased by Rosen. The petitioner’s testimony seems to indicate that Marx, acting for himself and the petitioner under the terms of their contract with Rosen, purchased the fee title and after the property had been conveyed to Rosen and a mortgage was executed thereon by Rosen to the petitioner’s corporation, Rosen then procured the loan and paid to Marx and the petitioner the total consideration of $313,000 agreed to be paid for the property, which amount consisted of the proceeds of the loan in the amount of $225,000 and $88,000 otherwise furnished by Rosen.
If the facts be as indicated, then the fee title purchased by Marx was not paid for with Rosen’s money, since Rosen did not get the money from the loan until after the fee had been purchased by Marx *894 and transferred to Rosen under the contract of sale, and Rosen had executed and delivered the mortgage on the property to the mortgagee.
However that may be, it is not necessary for us to base our decision upon inferences or doubtful conclusions of fact. The parties stipulated in clear and unambiguous language (1) that on February 2, 1923, Marx entered into a contract with Rosen whereby Marx agreed to sell the property in question to Rosen for $313,000; (2) that Marx, acting for himself and the petitioner, then exercised the option to purchase the fee title for $95,000 in accordance with the terms of the lease; and (3) that the owner of the fee title then conveyed title in the fee to Marx, who in turn conveyed title to Rosen, pursuant to the contract of purchase. (See paragraphs 6 and 7 of the stipulation, set out in our findings of fact hereinabove.)
This stipulation of the parties, we think, is binding upon us, and its plain legal effect can not be avoided or modified by the ambiguous testimony of the petitioner, even if such testimony be construed to be in conflict with the stipulation.
On the other hand, Rosen did not obtain the $95,000 until he acquired the property. This was a part of the $225,000 loan procured by Rosen on the property as security. It is difficult to see how he could have used the propert}'' as security for a loan until he first acquired the property. In any event we think the testimony that the $95,000 was paid out of Rosen’s money is a conclusion not warranted by this record.
Prior to the purchase of the fee by Marx, acting for himself and the petitioner, the legal title to the building erected by them on the leased premises was in the lessor. Upon the purchase of the fee, the legal title to the whole property vested in Marx, who held same for himself and the petitioner, and the leasehold merged in the fee. This is the generally recognized rule, Wisconsin Nat. Bank, 4 B. T. A. 109, at pp. 112, 113, and authorities cited. The same rule prevails in Illinois. Carroll v. Ballance, 26 Ill. 9; Bond v. Moore, 236 Ill. 576; 86 N. E. 386, 391; Hill v. Hill, 264 Ill. 219; 106 N. E. 262, 265.
It follows that the profit derived by the petitioner from the transaction in question represents his share of the gain realized from the sale of the fee title, which was purchased and sold within the taxable year by Marx, acting for himself and the petitioner. Hence, said property, to wit, the fee title, did not constitute a “ capital asset ” within the meaning of the taxing statute, since it had not been held by Marx and the petitioner for more than two years prior to the sale, and the profit derived is not taxable as capital gain, but as ordinary income.
Reviewed by the Board.

Judgment will be entered for the responderá.