GEORGE F. STARR *et al.*

*v.*

GEORGE S. MOULTON *et al.*

*Filed at Ottawa February 3, 1881.*

1. WILL—*power of executor to mortgage lands.* Where a testator clothed his executor with discretionary power to sell such unproductive property as, in his judgment, would be to the interest of the estate, or convert the same into productive property by making improvements thereon, when, in his judgment and discretion, justified by the condition of the estate, and throughout the will his intention appeared to be that his executor should keep his estate intact so far as he was able, and generally to manage it in such way as to make it as productive as possible, it was *held*, that the executor had the power to borrow money to improve unproductive real estate, and to give a mortgage on the property to secure the loan.

2. Where an executor is empowered generally, by will, to improve unproductive real estate, and such power is practically without limit, being an authority to make improvements to any extent which, in his judgment and discretion, the condition of the estate should warrant, it will be presumed the testator intended to give his executor such power over the estate as would enable him to raise whatever means would reasonably be required in making the contemplated improvements, and this includes the power to mortgage.

3. TRUSTEE—*exercising discretionary power—courts inclined to sustain his action.* Where a trustee has acted in good faith in a matter pertaining to the trust, and it is evident from the instrument creating the trust, that it was intended to clothe him with a large discretionary power in the discharge of his duties, and it does not clearly appear that he has transcended them, courts of equity are not inclined to disturb and unsettle an important business transaction thus entered into by him, to the detriment of third parties who have acted in equally good faith.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. W. W. FARWELL, Judge, presiding.

This was a bill in chancery, filed by appellants George F. Starr and Louisa I. Starr, together with others, as heirs at law of John F. Starr, deceased, in the circuit court of Cook

county, on the 5th day of October, A. D. 1878, against the appellees, for the purpose of enjoining the sale, under a deed of trust, of certain property mentioned in the bill, and for other relief. The bill charges, in substance, that George F. Starr, on or about the 12th of March, 1873, died, leaving a last will and testament, wherein Jeannette C. Starr, his widow, and Dr. John Nutt, were appointed executrix and executor; that said will was admitted to probate March 27, 1873; that John Nutt renounced his right to act as co-executor; that on the 13th day of May, 1873, letters testamentary were granted to Jeannette C. Starr, who qualified as sole executrix and trustee under the will; that John F. Starr, at the time of his death, was the owner of lots 3 and 4, block 1, Union Park addition to Chicago; that in October, 1873, Jeannette C. Starr, as such executrix, tried to borrow $9900 on lot 3 and east 10 feet of lot 4, but, everybody declining to loan, on the ground that she had no power to borrow money and encumber the real estate for the payment of it, conspired with her co-defendants to evade the terms of the will and make a loan for herself of the $9900, and to accomplish this, made a sham conveyance of lots 3 and 4, being a parcel of land having a frontage of 100 feet on West Lake street, to Thomas Dowling, for the pretended consideration of $20,000, which deed was recorded on the 13th day of October, 1875; that such sale was *bona fide* only as to the west 40 feet of lot 4; that Thomas Dowling then made a loan for Mrs. Starr, of the defendant Moulton, on the east 60 feet, of $9900, in three separate sums of $3300 each, secured by three 20-foot tracts, by three trust deeds, to Edward D. Hosmer, as trustee, and Charles D. Hosmer, as successor in trust, which trust deeds were also recorded on the 13th of October, 1875; that Jeannette C. Starr actually got the $9900 from Moulton, and then Dowling and his wife reconveyed said 60 feet to said Jeannette C. Starr, which deed was also recorded October 13, 1875, for the pretended consideration of $12,000; that Hosmer, as trustee, acting under the direction of Moulton,

claims that there is a default in interest notes, and threatens to sell said property under the power given him by the trust deed, and has given public notice that he will sell two of said tracts on account of said default. Alleges that said Jeannette C. Starr is insolvent; prays that said three trust deeds be declared to be no lien on said 60 feet; to set aside the deed from Jeannette C. Starr to Dowling, and from Dowling to Jeannette C. Starr, so far as they relate to said 60 feet, and vest the title again in complainants, and that Moulton and the Hosmers be enjoined from selling under the trust deeds.

The will of John F. Starr is made a part of the bill, and is in these words:

"*First.*—It is my wish, and I hereby direct, that all my just debts be paid by my executors, hereinafter nominated and appointed, out of any funds coming into their hands.

"*Second.*—I give, devise, and bequeath unto my beloved wife, Jeannette C. Starr, the homestead in which I now reside, in the village of Glencoe, in Cook county, aforesaid, consisting of about five and eighty-eight one hundredths acres, and as enclosed by the fence surrounding the same, with the household property therein contained, and personal property used thereon and thereto belonging, for her own use during her natural life, to be held, used and enjoyed by her as a home for herself and our children during their minority, and at her death to be equally divided between them.

"*Third.*—It is my will, and I direct, that my two sons, George F. Starr and William E. Starr, shall each, on arriving at the age of majority, receive the sum of seven thousand dollars, to be paid to them by my said executors, hereinafter named, to be realized from the sale of such real estate as, in their judgment and discretion, shall be found most desirable, to be sold for the good of the remaining portion of my estate. My said executors, in selecting for sale, to have reference to the productive quality of the real estate, and sell such as, in their judgment, may be considered as yielding the least return, or most undesirable to hold.

"*Fourth.*—I give, devise and bequeath to each of my daughters, Louisa I., Laura M., Jessie D., Grace J. and Bertha E. Starr, the sum of five thousand dollars, to be set apart for their use on arriving at majority, the amount named for each one to be set apart as she shall attain the age of majority, and held by my said executors in productive real estate, lands and tenements, or other secure investment, and the proceeds thereof, as rental or otherwise, to be paid annually thereafter, to each of my said daughters so having arrived at their majority.

"*Fifth.*—It is my will, and I direct, that all the residue of my property, both personal and real estate, be kept together, as much as the present condition of the same may permit and allow, until my youngest daughter, Bertha E. Starr, shall arrive at the age of majority, at which time it is my desire that two-thirds of my estate remaining undisposed of by the provisions hereinbefore contained, be so divided and distributed among my said children, or the survivors of them, as to make their portions derived from my said estate equal, share and share alike, and at the death of my wife, that the remaining one-third of my said estate be equally divided among my children.

"*Sixth.*—It is my will, and I direct, that all my interest acquired by contract for sale of real estate in the real estate held in the name of Thomas Hurford and Thomas Dunaway, as shall appear from said contracts, entered into by the said Thomas Hurford with me and by the said Thomas Dunaway with me, be separated, by sale or otherwise, as shall, to my said executors, appear to be for the interest of my said estate, and that on sale of the same the proceeds thereof not required to meet demands against my said estate, or provide for bequests hereinbefore made, shall be invested in productive real estate, for the benefit of said estate; and I hereby give to my executors full discretion to separate my portion in said real

estate, and sell the same or retain it, as may by them be deemed advisable.

" *Seventh.*—I hereby nominate and appoint my wife, Jeannette C. Starr, and my friend, Dr. John Nutt, as executrix and executor of this my last will and testament, and direct that they shall not be required to give bond for the faithful execution of the duties and trust hereby imposed, and I do hereby give them full power and authority to sell and convey such real estate, and to sell personal property at private or public sale, as shall be considered most for the interest of my said estate, and to take charge of all my property, of whatever kind and wherever situate, collect rents from my real estate and tenements, and apply the proceeds thereof as hereinbefore directed, and with discretionary power to sell such unproductive property as may, in their judgment, be found to the interest of my said estate to sell, or convert the same into productive property by improvement thereon, when justified by the condition of the estate, and also if, in their judgment, the condition of the estate will warrant. After both my sons, hereinbefore named, have attained their majority, to make such further advances to them, my said sons, on account of their interest in said estate, as in the judgment of my said executors shall appear desirable and for the interest of my said children."

Moulton, Dowling and the Hosmers filed answers, admitting the execution of the deeds, the giving of the notes and loan of the money, but denying the alleged conspiracy to evade the provisions of the will, and claiming the whole transaction was in good faith, etc.

Upon the hearing, the circuit court rendered a decree dissolving the injunction and dismissing the bill, which, on appeal, was affirmed by the Appellate Court for the First District. Appellants, being dissatisfied with the determination of that court, bring the case to this court for review.

84—97 ILL.

Messrs. CULVER & HURFORD, for the appellants:

In this case two points are presented:

1st. Did Jeannette C. Starr make the loan indirectly for *herself?* And—

2d. Did she ever have power, as trustee under the will, to secure the payment of money borrowed, by mortgaging the property of the estate?

The facts in the record show that she indirectly procured the loan to herself. We claim that the trustee never had any right, under the will, to mortgage any portion of the estate to secure the payment of borrowed money.

The power, in a trustee under a will, to sell real estate does not carry with it a power to mortgage, unless the estate is devised subject to a charge. *Stronghill* v. *Austy*, 16 Jurist, 671; *Page* v. *Cooper*, 16 Beav. 396; *Haldenby* v. *Spofforth*, 1 id. 395; *Bloomer* v. *Waldron*, 3 Hill, 361; *Content* v. *Servoss*, 3 Barb. 128; *Alb. F. Ins. Co.* v. *Bay*, 4 N. Y. 9; *Russell* v. *Russell*, 36 id. 581; *Watson* v. *McComb*, 1 Hill, 111; *Cummings* v. *Williams*, 1 Sandf. Ch. 17; *Morris* v. *Watson*, 15 Minn. 212; *Taylor* v. *Galloway*, 1 Ohio, 104; *Gaylord* v. *Stebbings*, 4 Kan. 42; Lewin on Trusts, (ed. 1858) [*416] p. 363; 1 Hermann on Mortgages, § 237; 1 Jones on Mortgages, (2d ed.) § 129.

Mr. A. B. JENKS, for the appellee Moulton:

Power given in a will to sell and convey, coupled with the power to take charge of and improve according to their judgment, and a direction to pay debts, such as is given by this will, implies a power in the trustee to mortgage.

A power to sell and convey implies a power to mortgage, which is a conditional sale. Willard's Eq. Jur. pp. 486 and 487; Sugden on Powers, p. 552; *Mill* v. *Banks*, 3 P. Wms. 1; *Woods* v. *Woods*, 1 M. & C. 401; *Ball* v. *Harris*, 4 id. 267; *Haldenby* v. *Spofforth*, 1 Beav. 390.

But where an estate is devised to trustees, charged with debts, and subject thereto, upon trust for certain parties, so

that a sale, though it may be authorized and required, is not the testator's sole object, the trustees may, for the purpose of paying the debts, more properly mortgage than sell. Perry on Trusts, § 768; *Ball* v. *Harris,* 4 M. & C. 264.

In this case the land in question was charged with a debt, viz: the Boone mortgage of $10,000, and the will directed the executrix to pay debts and to improve the real estate, and the money was borrowed from Moulton and used in paying said debt, and turning the unproductive into productive property.

A testamentary charge of real estate with the payment of debts, generally authorizes a trustee to whom, after imposing the charge, the testator has devised the estate upon trust for other persons, to sell or *mortgage* the estate charged, and exempts the purchaser or mortgagee from liability to see to the application of the purchase or mortgage money. *Ball* v. *Harris,* 4 M. & C. 264; *Ball* v. *Harris,* 8 Sim. 485; *Stronghill* v. *Austey,* 1 DeG., M. & G. 634; *Page* v. *Cooper,* 16 Beav. 396.

And when the sale is for the purpose of raising a particular charge, and the estate is settled subject to that charge, it may be proper to raise the money by mortgage, and the court will support a mortgage as a conditional sale within the power, as a proper mode of raising the money. Perry on Trusts, § 768; *Stronghill* v. *Austey,* 1 DeG., M. & G. 645; *Page* v. *Cooper,* 16 Beav. 400.

A power to sell does not authorize an exchange, but an exchange or partition may be effected circuitously, under a power of sale, by using the form of a sale. 2 Sugden on Powers, pp. 429, 430, and cases cited in note; 2 Ves. Jun. 101; Perry on Trusts, § 769.

And also, suppose a will should contain a direction or power to raise money out of the rents and profits of an estate to pay debts or portions, etc., a question might then arise, whether such power would authorize a sale or mortgage of

the estate under any circumstances, as, for instance, if it were otherwise impracticable, without the most serious delays and inconveniences, to satisfy the purposes of the trust. Now this is a point upon which great authorities have entertained opposite opinions. The old cases generally inclined to hold that the power should be restricted to the mere application of the ordinary rents and profits. The more recent cases hold to a more liberal exposition of the power, so as to include in it, if necessary for the purposes of the trust, a power to sell or mortgage the estate. Story's Eq. § 1064; *Green* v. *Belcher,* 1 Atk. 505; *Baines* v. *Dixon,* 1 Ves. 42; *Countess of Shrewsbury* v. *Earl of Shrewsbury,* 1 Ves. Jr. 233; S. C. Bro. Ch. R. 120; *Trafford* v. *Ashton,* 1 P. Williams, 415, 419; *Allan* v. *Backhouse,* 2 V. & Beame, 65, 76; 1 Madd. Ch. Pr. 481, 484; 2 Md. Ch. Dec. 497.

Trustees of freeholds are the legal owners of the estate, but, without some general or special power, they can not make large improvements; they must pay taxes, collect rents, etc. Perry on Trusts, §§ 526, 527; *Fountain* v. *Pellet,* 1 Ves. Jr. 337; *Bowes* v. *Strathmore,* 8 Jur. 92; *Green* v. *Winter,* 1 Johns. Ch. 26; *Coggswell* v. *Coggswell,* 2 Edw. Ch. 231; 1 Barb. Ch. 34; 1 Bradf. 321.

The converse, therefore, is true, where, as in this case, general power is given to the trustees by the will, and they have the right, in such event, to make large improvements at their discretion.

Where rents are increased upon the ward's land by improvement, the trustee is allowed credit for expenditures. Perry on Trusts, §§ 606, 607; *Hood* v. *Bridgport,* 11 Eng. L. & Eq. 271.

Also, a trustee may reimburse himself for money advanced in good faith for the benefit of the *cestui que trust,* or for the protection of the property. Perry on Trusts, § 485; *Balsh* v. *Hyham,* 2 P. Williams, 453.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

None of the material charges in the bill, except those alleging a conspiracy between the defendants for the purpose of evading the provisions of the will, and imputing bad faith in negotiating the loan from Moulton, are seriously controverted, and may be regarded as substantially true. There is no question, but that some time before the 13th of October, 1875, Jeannette C. Starr, the executrix, entered into an arrangement with Dowling, by which he was to erect, on the east sixty feet of the lots, three buildings, in part payment of the remaining forty feet on the west side, which she was to sell to him, and that, for the purpose of enabling him to negotiate a loan from Moulton for $16,500, which was to be divided between them according to their respective shares in the lots, and to be used by them, in part, in the same proportion, in discharging an incumbrance of $8000 on the entire property, which existed at the time of Starr's death, she was to convey to him the entire property, and, upon obtaining the loan, he was to re-convey to her the sixty feet off the east side of the lots; and that, upon the day above mentioned, the arrangement was fully carried out; that Moulton, through his agents, the Hosmers, advanced to Dowling the $16,500, for which Dowling executed to Edward D. Hosmer, as trustee, five trust deeds, to secure the same, each covering one-fifth of the two lots; that the incumbrance of $8000 was paid off with the proceeds of the loan, and the residue of the part of the loan received by the executrix was applied in the erection of the buildings on the east sixty feet of the lots, and that the whole of this business was transacted in the name of Dowling.

So far there is no controversy. It is insisted, however, by appellants, that, although Dowling was clothed with the legal title to the whole of the lots, at the time of the loan and of the execution of the trust deeds, yet, that so far as the east sixty feet is concerned, it was conveyed to him by the execu-

trix, without consideration, for the express purpose of ena-
bling her, through him, in evasion of the provisions of the
will, to obtain a loan, from Moulton, of $9900—the amount
received by her under the arrangement—which, as is claimed,
could not have been done by her in her own name, for
the reason, it was unauthorized by the will; and that all this
was fully known to the Hosmers, as agents of Moulton, at
the time of the transaction, and that, therefore, the heirs are
not bound by it.

In answer to this, it is, in the first place, denied that the
Hosmers knew anything about the private arrangements or
understanding between Dowling and the executrix. But it
is admitted that the Hosmers understood from Dowling that
he had purchased the property of the executrix, and that they
knew, from the abstract of title, that she had conveyed the
same to him, which, it is admitted, the will clearly authorized
her to do.

In the second place, appellees insist, that under the pro-
visions of the will, the executrix was not only authorized to
sell the lots in question, but also to mortgage them.

It will be thus seen that but two questions are presented
by this record, for determination—one of fact—the other of
law. *First.*—Were the Hosmers, or either of them, charge-
able with notice, at the time of the loan, of the fact that the
east sixty feet of the lots had been conveyed by the executrix
to Dowling, without consideration, for the purpose of enabling
her, through him, to obtain the loan of $9900 of Moulton?
*Second.*—Was the executrix, under the provisions of the will,
authorized to mortgage, in her own name, that portion of the
lots retained by her, for the purposes for which the same was
mortgaged by Dowling?

The view we take of the latter question, renders it unnec-
essary to discuss the first. The general principles of law
governing questions of this kind, may be regarded as settled
by the current of authority,—yet, difficulty is often encoun-
tered in applying them to actual cases. In the case before

us it is clear that the executrix had .power, under the will, to
sell such portions of the real estate as she might deem proper
for the purposes of paying debts, removing incumbrances, or
of improving the remainder with a view of making it pro-
ductive. Throughout the will, expressions are to be found
which tend to show that it was the intention and expectation
of the testator that his executors would keep his estate
intact, so far as they were able, and generally to manage it in
such a way as to make it as productive as possible; and, to
this end they were given the power to sell and convey such
parts of it as they, in their discretion, deemed necessary to
accomplish the purpose in question, and, this grant of power,
under the circumstances of this case, we are of opinion, in-
cluded the power to mortgage when that mode of raising
money to answer the objects of the will would, in the judg-
ment of the executors, be to the best interest of the estate.
*Butler* v. *Huestes*, 68 Ill. 597; *Pool* v. *Potter*, 63 id. 537.
By the seventh section they are clothed with *discretionary*
power to sell such unproductive property as, in their judg-
ment, would be to the interest of the estate to sell, *or to con-
vert the same into productive property by making* improvements
thereon, when justified by the condition of the estate. In
the event of a want of means from other sources, how could
means be raised to improve this unproductive property, if the
executors possessed no power to mortgage it? It certainly
could not have been intended that the productive realty
should be sold for such purpose. It will be perceived that
this power to improve the unproductive realty is practically
unlimited. They are authorized to make improvements to
any extent which, in their judgment and discretion, the con-
dition of the estate warrants, and of this they are the ex-
clusive judges, so long as they act in good faith and with
ordinary prudence. Under these circumstances the testator
must be presumed to have intended to give the executors such
power over the estate as would enable them to raise whatever
means would reasonably be required in making the contem-

plated improvements upon the unproductive property; or, in other words, it must be presumed, under the circumstances of this case, that the testator intended the power to raise the necessary means, to be co-extensive with that to make the improvements; and, we are of opinion, this would reasonably include the power to mortgage, as that is the ordinary method of raising money for such purpose. There is nothing disclosed by this record, which we have been able to discover, that indicates bad faith on the part of any one connected with the transaction complained of. The money was advanced by Moulton in the regular course of business, and, we have no doubt, in good faith. It has been applied to entirely legitimate purposes, under the provisions of the will, and the property by which it was secured must be held for its repayment. Where a trustee has acted in good faith in a matter pertaining to the trust, and it is evident, from the instrument creating the trust, that it was intended to clothe him with large discretionary powers in the discharge of his duties, and it does not clearly appear he has transcended them, courts of equity are not inclined to disturb and unsettle an important business transaction thus entered into by him, to the detriment of third parties who have acted in equally good faith with himself.

Upon the whole, we are of opinion that the decree of the circuit court was right, and, consequently, there was no error in affirming it.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*