## Salem Ely v. A. E. Pike.

### Gen. No. 4,345.

1. MORTGAGE—*when trustee has power to.* A trustee has power to mortgage real estate where he is given the power to "take charge of, manage and control the same, for the use and benefit of" a person designated.

2. APPLICATION OF MONEY—*when party dealing with trustee not bound to see to.* Where one acting as trustee has been confided with the application of the money received by him in any particular transaction, the party paying such money is not bound to see to its due application.

Foreclosure proceeding. Appeal from the Circuit Court of Kankakee County; the Hon. ROBERT W. HILSCHER, Judge, presiding. Heard in this court at the April term, 1904. Affirmed. Opinion filed August 24, 1904.

W. G. BROOKS, for appellant.

CHARLES B. CAMPBELL, for appellee.

MR. PRESIDING JUSTICE FARMER delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court in favor of appellee for the foreclosure of two real estate mortgages. In brief, the facts are as follows: In 1885, Irene Spitler conveyed the land described in the mortgages, consisting of 160 acres, to William W. Ely in trust for the use and benefit of Benjamin and Payson Ely, sons of

William Ely. On the tenth of March, 1888, William W. Ely, trustee, borrowed $200 from appellee for which he gave his note payable one year after date, with interest at eight per cent per annum, and secured the same by mortgage or trust deed on the land he held in trust for his sons. On March 25 of the same year, he borrowed $150 from appellee for which he gave his note bearing interest at eight per cent, payable one year after date, and secured the same by trust deed on the same land. The interest was paid on these notes for some four or five years by William W. Ely, and no part of the principal having been paid and the interest being in default, in January, 1896, appellee filed his bill to foreclose. November 24, 1899, William W. Ely, the trustee, executed a deed to the trust property to appellant, Salem Ely. December 23, 1899, and August 24, 1901, Benjamin and Payson Ely, sons of William W. Ely, respectively executed to appellant quit-claim deeds to the lands formerly held in trust by their father for their benefit. Appellant then amended his bill and made Salem Ely and Benjamin and Payson Ely parties defendant. Salem Ely answered the bill and all the other defendants were defaulted. The answer admits that William W. Ely became indebted to appellee for which he gave his notes in the amounts mentioned in the bill, and to secure the same executed the mortgages described in complainant's bill, but denies the right and authority of said William W. Ely to mortgage and incumber the lands; denies that he held the legal title thereto, and alleges that he held the premises in trust for his sons, Benjamin and Payson Ely, to manage and control for their benefit, and sell and dispose of the same when he deemed it to their advantage to do so, and account to his said sons when they were twenty-one years of age; alleges that said sons never received any benefit from the land and never authorized nor ratified the giving of the mortgages. The answer further alleges that the premises were sold for taxes June 8, 1896, that a tax deed was issued to W. W. Todd, July 19, 1898, and that appellant purchased the premises from Todd July 20, 1898;

also sets up the conveyances to appellee from William W. and Benjamin and Payson Ely and alleges that he is the sole owner of said lands. Appellant also filed a cross-bill in which he claimed to be the owner of the premises by virtue of the conveyances from the Elys and from Todd, who held the tax title, and asked that the mortgages to appellee be declared void and cancelled and set aside as a cloud on the title of appellant. A demurrer was sustained to the cross-bill and the cause was heard by the court on the bill, answer of appellant and replication thereto, and a decree entered foreclosing appellant's mortgages and authorizing a sale of the premises for their payment.

The correctness of the decree and the validity of the mortgages depend entirely upon the power conferred upon William W. Ely by the deed from Irene Spitler. That part of said deed necessary to be considered and construed in this proceeding is as follows:

"In trust, nevertheless, to take charge of, manage and control the same for the use and benefit of Benjamin H. Ely and Payson Ely, the sons of said Wm. W. Ely, with power to sell and dispose of the same for the benefit of said Benjamin and said Payson, when in his discretion he may deem it to the advantage of said Benjamin and said Payson so to do, accounting to said Benjamin H. Ely and said Payson Ely, when they, said Benjamin and said Payson Ely, shall arrive at the age of twenty-one years for all the proceeds of said land with lawful interest thereon, less ten per cent on the gross amount which said Wm. W. Ely shall keep and retain for his compensation in and about the management of said trust."

Appellant's position is that this confers a power to sell only, and not a power to incumber or mortgage, while appellee contends that by a proper construction of the provisions of the deed quoted, Ely had the power and right to borrow money to improve the property and to secure it by mortgaging the land.

It is very apparent that the power to sell the land was not the chief object or purpose sought to be accomplished in the creation of the trust, and the power conferred upon the trustee. The primary object of the trust was that the

trust estate should be handled by the trustee for the use and benefit of Benjamin and Payson Ely. The power to sell was but an incident to the primary and more important object of managing and controlling. The first duty and power imposed upon the trustee by the deed creating the trust is to "take charge of, manage and control the same for the use and benefit of Benjamin H. Ely and Payson Ely," and the further power is conferred "to sell and dispose of the same for the use and benefit of said Benjamin and Payson when in his discretion he may deem it to the advantage of said Benjamin and Payson so to do." The power to manage and control the lands for the benefit of the beneficiaries of the trust, being the primary object of its creation and the paramount duty of the trustee, it would reasonably and necessarily follow that he had the power and right to make such improvements and repairs on the property as in the exercise of a reasonable discretion he deemed for the benefit of his sons. The author of the trust, reposing confidence in the trustee, did not give specific directions as to every act he should or should not have power to perform with the trust property, but confided its full management and control to the trustee for the purpose mentioned, and left the rest to his judgment and discretion. Under the power conferred, if he determined it was to the best interests of his sons that he cease to "manage and control" the trust property, and that it would be to their advantage for him to "sell and dispose" of it, he had the power to do so. But so long as it was deemed to the best interest of the beneficiaries that the trustee should manage and control the property, the power to do so included the power to improve and repair, and if in the exercise of the discretion allowed him under the deed appointing him, he deemed it to the advantage of the beneficiaries that he procure the necessary funds by mortgaging the land he had the power and authority to do so. It was certainly never intended by Irene Spitler that if it became necessary in order to make the land productive and profitable to the objects of her bounty that new improvements should be made, or

old ones repaired, that the trustee should not have the power to make them. If such a construction be placed on the deed then in such contingency the trustee would have no discretion about selling, but would be compelled to dispose of the land, even though it might be greatly to the advantage of the beneficiaries for him to retain the management and control of it and incur indebtedness in making the improvements. These views are supported by Starr, et al., v. Moulton, 97 Ill. 525.

Appellee testified, and it was not denied, that when William W. Ely came to him to borrow the money he said he wanted to use it in improving the farm; as he remembered it, he said he wanted to build a barn and some fences. If appellee had been a dealer in lumber and building material, and the trustee instead of borrowing money from him to pay for the improvements had bought the lumber and material from him on a credit, can it be doubted he could have enforced a lien against the property for payment? We think not, and on principle as well as upon the authority of Starr, et al., v. Moulton, *supra*, we have no doubt that the trustee had the power to mortgage the trust property for money to repair and improve it so as to make it accomplish the objects of the trust. In the Starr case it was said: " Where a trustee has acted in good faith in a matter pertaining to the trust, and it is evident, from the instrument creating the trust, that it was intended to clothe him with large discretionary powers in the discharge of his duties, and it does not clearly appear he has transcended them, courts of equity are not inclined to disturb and unsettle an important business transaction thus entered into by him, to the detriment of third parties who have acted in equally good faith with himself." Appellant contends that even if the trustee had the power to mortgage the land for money to make improvements, it would be the duty of the person furnishing the money to see that it was used for that purpose, and that as there was no evidence in this case that the money loaned William W. Ely by appellee was, in fact, used for the purpose for which it

was borrowed, the decree is erroneous.    That this does not belong to that class of cases where the party dealing with a trustee is bound to see to the application of the money, we think is sustained by numerous authorities.    Irene Spitler, in creating the power, confided in and relied upon the judgment and discretion of the man she appointed to execute it.    If the trustee had sold the land under the power of sale, the purchaser would not have been obliged to have seen that he properly accounted to the beneficiaries for the money.    The strict English rule to the contrary has not been favored by American courts and our Supreme Court said in Franklin Savings Bank v. Taylor, 131 Ill. 376, that " Where it appears that the donor of the power confided the application of the purchase money to the judgment and discretion of a particular person or persons designated it is conclusive that it was not intended to burden the purchaser with it." See also Whitman v. Fisher, 74 Ill. 147; Seaverns v. Presbyterian Hospital, 173 Ill. 414; Story's Equity Jurisprudence, sec. 1135.

The mortgages to appellee being valid liens against the real estate, the title claimed by appellant through the tax deed to Todd was not a proper subject-matter for a court of equity to take jurisdiction of, and the demurrer to the cross-bill was therefore properly sustained.

Finding no error in the record the decree of the Circuit Court is affirmed.

*Affirmed.*