**Edward Sohm et al., Trustees, Appellees, v. Royal Hotel Company of Quincy et al., Royal Hotel Company of Quincy, Appellant.**

### Gen. No. 7,639.

MORTGAGES—*power of trustees under trust deed to consent to lease of mortgaged premises for extended term.* Trustees under a trust deed of hotel premises given to secure first and second bonds sold for the purpose of constructing the hotel were empowered thereunder to consent to the making of a lease of the hotel for an extended term, which provided that foreclosure of the trust deed should be made subject to the lease in question, where the trust deed created an active trust, giving the trustees wide discretionary powers to manage and control the property for purpose of constructing the hotel and conserving income for payment of the trust indebtedness, and provided that in addition to the real security, the mortgagor conveys to the trustee "as further and collateral security" for payment of the first bonds "all rents and claims for rents" and provided for assignment to the trustees of "moneys from and on account of the lease" of the premises, and it was contemplated by all parties a lease of the premises would be necessary to secure requisite income; and where it appears that such lease was entered into by the mortgagor and consented to by the trustees at a time when interest was in default on the second bonds, the hotel property stood vacant and could only be rented on a term lease and all parties, including bondholders, recognized the necessity of the lease, it is not subject to cancellation upon foreclosure of the trust.

Appeal by defendant from the Circuit Court of Adams county; the Hon. FRED G. WOLFE, Judge, presiding. Heard in this court

Sohm v. Royal Hotel Co. of Quincy, 232 Ill. App. 60.

at the October term, 1923. Reversed and remanded with directions. Opinion filed January 10, 1924.

C. H. Wood, for appellant.

Frank J. Penick, Alfred J. Brockschmidt and Edward P. Allen, for appellees.

Mr. Justice Shurtleff delivered the opinion of the court.

This suit was originally a bill in chancery to foreclose a mechanic's lien on the property of the Gem City Hotel Company, filed by the Superior Chemical & Engineering Company, which cause was heard by the circuit court of Adams county, Illinois, and is now pending for further proceedings.

The present action is a cross-bill filed by Edward Sohm, John M. Winters and Jackson R. Pearce, as trustees, to foreclose two deeds of trust on the same property, making all parties to the original suit defendants. A number of holders of second bonds, secured by the second deed of trust, filed a petition asking leave to be made parties defendant, which petition was granted by the court and their answers filed. Upon these pleadings the cause was referred to the master in chancery of said court to take and report the evidence, together with his conclusions of law and fact.

The first and second deeds of trust, which the cross-bill seeks to foreclose, are for the sum of $100,000 each, and dated July 1, 1910, duly acknowledged and recorded in the recorder's office of Adams county. After the execution of the two deeds of trust for $200,000, the trustees thereunder, by reason of their authority contained in said deeds, made and executed trustees' notes to the extent of about $27,000, of which there remains unpaid the sum of $13,000 due at the time of the filing of said cross-bill. From the money derived from the sale of bonds secured by said first

and second deeds of trust and trustees' notes, the ground was acquired and the building known as the Quincy Hotel erected thereon, at a total cost of about $227,000.

On May 1, 1914, the Gem City Hotel Company, as lessor, made and entered into a lease for the said premises, known as the Hotel Quincy, with the Royal Hotel Company, a corporation existing under and by virtue of the corporate laws of the State of Illinois, as lessee, which lease was approved by the trustees of said mortgagor, the Gem City Hotel Company. Under this special lease, as it is termed, the Royal Hotel Company, as tenant, went into possession of the premises, which are the subject-matter of this suit, and still are in possession as tenant of said Gem City Hotel Company, as lessee under said lease. The lease was signed and executed four years after the execution, acknowledgment and recording of said first and second deeds of trust, which cross complainants herein are seeking to foreclose. At the time of the execution of said lease to Royal Hotel Company, some of the officers of said Royal Hotel Company were or had been officers of said Gem City Hotel Company.

No interest had been paid on the second trust deed notes, and this fact, as well as the knowledge of the amount of said indebtedness, and that the rents available from said lease would not be sufficient to meet the fixed charges, interest, taxes and repairs, as provided by the terms and provisions of said deeds of trust, was doubtless within the knowledge of all parties to this suit at the time said lease was executed.

The first and second mortgage bonds are held by numerous persons, in various amounts, and before any action could be taken by the first and second mortgage bondholders to protect their rights under said first and second deeds of trust, it was necessary that first and second bondholders, holding respectively thirty and forty per cent of said bonds, join together in order that they could proceed to take whatever ac-

tion was decided upon, and the trustees had no power or authority to foreclose said deeds of trust without such consent.

The Royal Hotel Company, upon the execution of the lease, went into possession of said Quincy Hotel, which at that time was practically a new building, being four years old, and the leading hotel in the City of Quincy. Owing to the elimination of competition in the business, the said Royal Hotel Company succeeded in making said hotel a paying proposition. The Royal Hotel Company sublets a portion of the premises, for which it receives in subrentals approximately $2,000 a year. The lease also provides in paragraph 24 that in the event the sale of intoxicating and spirituous liquor upon the premises shall be rendered illegal, either by the laws of the United States, the State of Illinois, or any municipal corporation thereof, a rebate of the rent at the rate of $1,800 per annum shall be allowed by the lessor to said lessee, for such length of time as the sale of liquor shall be and remain illegal. This provision also reduces the total amount of rent, so that the present rental of said hotel building is inadequate to pay and discharge the fixed charges of interest, taxes, insurance, etc.

The said Royal Hotel Company, the appellant herein, claimed that it had made extensive alterations, repairs and changes in and upon said premises during the years 1916, 1917, 1919 and 1920, the cost of which amounted to $12,815.11. The repairs, changes and alterations, as represented by said sum of $12,815.11, were made by the said Royal Hotel Company under the terms and provisions of said lease at its own expense, with the exception of repairs made to the elevator, which were borne equally by the said Gem City Hotel Company and said Royal Hotel Company. These changes, improvements and alterations were made by the said Royal Hotel Company for its convenience, service and financial benefit.

All of the rents as provided under the terms and provisions of said lease to said Royal Hotel Company were assigned and transferred to said trustees under the terms and provisions of said deeds of trust, as additional collateral security for the payment of interest, principal, taxes, insurance, etc., and this same provision was inserted in said lease as paragraph 28 thereof.

The trustees, acting under these provisions, have collected all the rents to date and have paid them out in the manner authorized, in so far as they will reach towards the payment of taxes, interest, insurance, etc. The rent as obtained under said lease is the only source of income derived from said premises, or possessed in any manner by the mortgagor, the said Gem City Hotel Company. The charges, fees and expenses of the trustees incurred in the handling of their duties were exceedingly low and economical in every way.

At the time of the execution and delivery of said lease on May 1, 1914, to the said Royal Hotel Company, default had been made in the payment of interest due on second mortgage bonds, and under the terms and provisions of said second deed of trust the sum of $4,000 was due upon said date—May 1, 1914, and a like sum maturing each year, all of which payment has been defaulted by the said mortgagor.

Owing to the default in the payment of interest upon the entire issue of second mortgage bonds since their issuance, the default in the payment of certain instalments on the principal due on the first and second mortgage bonds, the default in the payment of interest on trustees' notes since November 30, 1921, the first mortgage bondholders, representing more than thirty per cent of the entire issue, and second mortgage bondholders, represented by more than forty per cent of the entire issue, requested the trustees in writing to commence foreclosure proceedings in order that the

premises be sold and the proceeds be distributed and paid out, under the terms and provisions of said deeds of trust.

The main contention in this case being as to the power and capacity of the trustees under the deeds of trust to consent to and approve the lease to appellant, the Royal Hotel Company, we set out certain of the provisions and covenants in said deeds of trust:

"The equal and pro rata payment of each and all of said bonds is secured by a first mortgage or deed of trust of even date herewith duly executed by said Gem City Hotel Company to Edward Sohm, John M. Winters and Jackson R. Pearce, as trustees, conveying to said trustees in trust for the holders of said bonds and coupons and for the purpose of securing the payment thereof all of the real estate owned by said Hotel Company   *   *   *   and the rents, issues and profits thereof.

"*   *   *   And in consideration of the premises and of the sum of One Dollar to it in hand paid by said trustees, the receipt whereof is hereby acknowledged, does hereby grant, bargain, sell, convey, warrant and assign unto said Edward Sohm, John M. Winters and Jackson R. Pearce, as trustees of these presents and as joint tenants and not as tenants in common and to their successor or successors as such trustees all the following described real estate, to wit:   *   *   *   also all the buildings, improvements and fixtures now situated on the above-described real estate or which may be placed thereon and all the rents, issues and profits of said real estate and of each and every parcel thereof.   *   *   *

"Said premises are conveyed in trust for the equal and proportionate benefit and security severally and respectively of all and every the present and future holders of any and every of said first mortgage bonds or interest obligations that may at any time be issued hereunder and that are intended to be secured by this indenture, *and for enforcing the payment thereof, when payable, in accordance with the stipulations of this indenture,* and of the said bonds and interest cou-

pons respectively without preference, priority or distinction as to lien or otherwise of any one of said first mortgage bonds over any other of said first mortgage bonds by reason of priority in the execution, delivery or negotiation thereof, and so that each and every of said first mortgage bonds issued and to be issued, as aforesaid, shall have the same right, lien and privilege under and by this indenture as every other of said first mortgage bonds issued hereunder and so that subject to the terms hereof the principal and interest of every such first mortgage bond shall be secured hereby equally and proportionately with every other of said first mortgage bonds as though all had been made, executed, delivered and negotiated simultaneously with the execution of this indenture.'"

Then follow various provisions in the instruments of trust, referring to the construction of the hotel building and the conduct of the business, all of the powers, as to the application of funds, the protecting of the trust property being placed in the hands of the trustees, complainants in this cross-bill, and the first trust deed provided:

"As further and collateral security for the payment of said first mortgage bonds and of the interest thereon and for the performance by said Hotel Company of the covenants and agreements binding on said Hotel Company herein contained and in consideration of the sum of One Dollar to it in hand paid by said trustees, the receipt whereof is hereby acknowledged, said Hotel Company hereby assigns and transfers unto said trustees and their successors in trust, all rents and claims for rents of said premises herein conveyed and of any part of the same which may become payable or which it may or shall have at any time while any of said first mortgage bonds remain unpaid and hereby covenants and agrees that it will from time to time and at all times while any of said first mortgage bonds remain unpaid duly assign and transfer unto said trustees and their successors in trust as further and collateral security as aforesaid, all its right, title and interest in and to any and all lease or leases which

it may make of said premises or of any part of the same upon execution by it of such lease or leases, and that it will from time to time make to said trustees and their successors in trust such other and further assignments and transfers of said rents and claims for rent and of its right, title and interest in and to any such lease or leases with power of attorney to them to collect and to receipt and sue for said rents as said trustees and their successors in trust may at any time request.

"The moneys received by said trustees and their successors in trust from the said rents and claims for rents assigned to them by said Hotel Company and from and on account of the lease or leases of said premises or of any part of the same to be assigned and transferred to them by said Hotel Company as aforesaid, shall be paid out, used and appropriated by said trustees and their successors in trust for the following purposes, to wit:

"1. To pay the charges and expenses incurred by said trustees and their successors in the management of the trust herein created.

"2. To pay all taxes, special taxes and special assessments levied, etc.

"3. To pay for such additions to and for such repairs, alterations, improvements and betterments of the said property as may be made by the Hotel Company with the consent of the said trustees or their successors in trust.

"4. To pay all sums advanced under the provisions hereof by the trustees or their successors or by the holder or holders of any of said first mortgage bonds including interest at the rate of seven per cent per annum thereon from the date of such advances as hereinbefore provided.

"5. To pay ratably the said interest coupons attached to said first mortgage bonds.

"6. To pay ratably such of said first mortgage bonds as shall from time to time mature in the order in which they become due, no preference however to be granted between bonds of the same maturity,

"7. Any balance of said moneys from time to time not required for making the above payments shall be paid to said Hotel Company or upon its order or shall be paid out in the manner in which said Hotel Company may hereafter direct.

"All moneys received by said trustees from said rents or on account of said leases shall be kept by them on separate deposit, maintained in their names as such trustees in some duly organized bank in said City of Quincy, Illinois, and said trustees shall keep or have kept a separate book or separate books on account showing the receipts and expenditures of said moneys which book or books of account shall at all reasonable times be open to the examination of any officer of said Hotel Company and to the examination of any holder of said first mortgage bonds."

Section 12 of the trust deed provided as to the manner the trustees should execute said trust as follows:

"Said trustees and their successors in trust shall have full power from time to time to employ such clerks, assistants, agents or attorneys as they shall find necessary to enable them to discharge properly the duties devolving upon them under the provisions of this instrument, and to defray all expenses of executing said trusts out of any moneys coming to their hands. Any moneys, other than trust moneys, expended by said trustees for executing said trusts, or for protecting the trust property or the lien hereby created or for payment of the services rendered by any such clerk, assistant agent or attorney by them appointed or for the payment and discharge of taxes, special taxes, assessments and other liens on said premises or for keeping insured the buildings thereon, together with seven per cent (7%) interest on said moneys from the date of the expenditure thereof until they are repaid, shall constitute a further indebtedness hereby secured and are hereby made a lien upon said premises. * * * In the event that one or two of said trustees or of said successors shall so resign or in the event of the death of one or two of said trustees, or of one or two of said successors, then the trus-

tees or trustee, successors or successor not so resigning or then surviving, shall be the trustees or sole trustee hereunder and continue to act as such with all the powers and authority granted to or conferred upon said trustees herein appointed and shall in that event be vested with all the estate and rights hereby vested in said trustees herein appointed without the necessity if any further assurance or conveyance. * * *

"Section 15. The word 'trustees' as employed in this indenture shall be taken to mean the trustees or trustee hereunder for the time being, whether said party of the second part or their successors or successor in said trust. It is mutually understood and agreed that all the rights, powers and privileges herein contained, provided for and authorized shall be construed and deemed as cumulative and that no one or more of them is exclusive of the others or of any right given by law and that a failure to exercise any such right, power or privilege at any time shall not be taken to be a waiver thereof but that the same may be exercised at any time thereafter and shall remain unimpaired and in full force notwithstanding any such failure to exercise the same."

The trust deeds are executed by a third party, which included all of the stockholders and directors of the mortgagor, Hotel Company, among whom were some of the bondholders in this suit, to assure corporation authority for the executing of said instruments, but providing there should be no personal liability for the said indebtedness.

The lease in question was executed by the mortgagor, and appellant, the Royal Hotel Company, upon May 1, 1914, and provided for the payment of rent, in instalments, at the rate of $9,000 per annum, and to increase at the rate of $1,000 per annum, and for the year ending May 1, 1918, to be $12,000. There was an option reserved in the lease for the benefit of the lessee to extend the lease from May 1, 1918, for a term of six years, the rent, however, for the first two years to be $12,500; for the second two years $13,000 and

for the last two years the sum of $13,500, whereupon, on the first day of May, 1924, the lessee was to have an option to further extend the lease, under the same covenants and agreements for the period of five years to May 1, 1929, at the annual rental of $15,000 per annum during the entire period of the lease, the rent to be paid by instalments monthly. This lease contained clause No. 27, which is as follows:

"That it is understood and agreed that the demised premises are encumbered by two certain deeds of trust dated May 1, 1911, to said Edward Sohm, Jackson R. Pearce and John M. Winters, as trustees, and that the said trustees have signed their names hereunto, in order to evidence their consent as trustees to the making of this lease; and it is agreed that no foreclosure of either or both of said trust deeds shall in any manner operate to defeat this lease, but that in the event of foreclosure, the lessee shall be entitled to retain the premises the same as if no foreclosure had occurred"; and the lease recites that it is made "by and between the Gem City Hotel Company, a corporation, organized, etc. (hereinafter called the lessor), Edward Sohm, John M. Winters, Jackson R. Pearce, as trustees for said Gem City Hotel Company, and the Royal Hotel Company, a corporation, organized, etc.," and the said trustees executed the said lease, including section 27, as set out, and the said lease was assigned and set over, by the mortgagor, to said trustees, Sohm, Winters and Pearce, the cross complainants, and said cross complainants, as such trustees, have collected all of the rents under the said lease and the said lease would appear to have been fully carried out until the filing of the cross-bill in this suit, in the year 1922. It appears that the rents accruing from this lease have provided funds for the payment of all costs and expenses of the trust, the taxes, insurance and repairs upon the property and substantially the interest upon the $100,000 bonds secured by the first trust deed, but it does not provide funds for the payment of any interest upon the second trust deed bonds.

It further appears that an indebtedness created by the trustees to the amount of $27,000 to complete said building has been reduced to the amount of $13,000.

The only question in the case is whether the cross complainants, trustees, may foreclose said trust deeds and enforce the lien of the same against said property, free and clear of the said lease, or whether appellant, the Royal Hotel Company, is entitled to the term of said lease, and the lands sold subject to appellant's lease.

From the testimony taken, it appears that when the lease was entered into, upon May 1, 1914, the premises were vacant, the former tenant having become insolvent, and that there was "no other tenant in sight," or reasonable probability of securing any tenant, other than appellant. There is no charge that the trustees for the bondholders have not fully and faithfully performed their duties as trustees. The question is only raised that under the express provisions of the deeds, the trustees are not authorized or permitted to accept or approve any lease of said premises that would extend the term beyond the date of sale in suit to foreclose.

The master made his report, finding the equities of the cause in favor of the complainants in the cross-bill, subject to the lease of the appellant. Objections were filed to this report, which were made exceptions before the chancellor, and the exceptions were sustained by the chancellor and a decree entered, granting foreclosure of the trust deeds, freed from any claim or incumbrance of appellant's lease and appellant has brought the record to this court for review.

The only question which we deem necessary to consider on this appeal is the construction of said deeds and whether the language and covenants of the same are sufficient to empower the trustees to consent to a term lease and bind the bondholders. It has been held that trustees must always, in exercising their pow-

ers, act in the utmost good faith and with sound
judgment and prudence (*Merchants Loan & Trust Co.
v. Northern Trust Co.*, 250 Ill. 96); and the law pre-
sumes, where it is not shown to the contrary, that they
have followed that course. In this case the trustees
were the owners of the fee, until the mortgage debt
was paid. It was held in *Cobe v. Bartlett,* 191 Ill. App.
242, on page 253:

"As held in *Ware v. Schintz,* 190 Ill. 189, at
page 193: 'The relation of plaintiff and defendant to
each other is that of mortgagor and mortgagee, and
under the repeated rulings of this court a mortgagee,
as against the mortgagor, is held, as in England, in
law, to be the owner of the fee, having the *jus in re* as
well as *ad rem,* and entitled to all the rights and reme-
dies which the law gives to such owner, and may, after
condition broken, maintain ejectment against the
mortgagor. The mortgagor or his assignee, however,
is the legal owner of the mortgaged estate as against
all persons excepting the mortgagee or his assigns.
*Delahay v. Clement,* 3 Scam. 201; *Vansant v. Allmon,*
23 Ill. 30; *Carroll v. Ballance,* 26 Ill. 9; *Oldham v.
Pfleger,* 84 Ill. 102; *Fountain v. Bookstaver,* 141 Ill.
461; *Esker v. Heffernan,* 159 Ill. 38. The fee title held
by the mortgagee is in the nature of a base or deter-
minable fee. The term of its existence is measured by
that of the mortgage debt. When the latter is paid
or becomes barred by the statute of limitations, the
mortgagee's title is extinguished by operation of law.
*Pollock v. Maison,* 41 Ill. 516; *Harris v. Mills,* 28 Ill.
44; *Gibson v. Rees,* 50 Ill. 383; *Barrett v. Hinckley,*
124 Ill. 32; *Lightcap v. Bradley,* 186 Ill. 510. Until it
is extinguished the legal title is in the mortgagee for
the purpose of obtaining satisfaction of his debt.' "

The bondholders in this case, except as herein
stated, are not parties to this suit. Where they are so
numerous that the delay and expense of bringing them
in will be oppressive, it is not necessary to bring them
in. *Farmers' Loan & Trust Co. v. Lake St. El. R. Co.,*
173 Ill. 439. Certain of the bondholders filed an inter-

vening petition asking leave to answer the bill, which was granted, and in their answer they merely deny the allegation in the bill, that after the execution of said lease by the mortgagor, as lessor, the lessee did attorn to the complainants as mortgagees. This was upon the issue as raised by appellant, that after the execution of said lease and its assignment to the trustees they, the said trustees, occupied the position of mortgagees in possession. We forbear to discuss that question, as we do not deem it necessary to a decision of the case. It is to be observed that the bondholders, in their answer, in no way question the prudence, judgment or even power to consent to said lease or the validity of said lease, except as to its terms in contravening said mortgage indebtedness. At the time the lease was executed there had been a default in the payment of any interest upon the second trust deed bonds for four years, since the execution of the deed. It is laid down in Perry on Trusts, vol. 2, sec. 602g:

"Powers of trustees under deeds of trust and of mortgagees under mortgages with power of sale depend entirely upon the terms of the deeds. Such powers are created by and exist in the deeds and of course they exist in the terms in which they are created and in no others. They are to be exercised by the trustees *in pais*. They are wholly matters of convention and contract between the parties and not of law or jurisdiction. They can be exercised because they are conferred by one party upon another, and not because the law or the courts have conferred or authorized them. Statutes in some of the States have regulated their execution, but such statutes do not create the powers themselves."

It has been further held: The grantor in a deed of trust in declaring the trust may mold and give it any shape he chooses, and he may provide for the appointment of a successor or successors to the trustees upon such terms as he may choose to impose, but, when imposed, the terms must be pursued to render the acts of the successor in trust valid. It is alone by force of

the power delegated by the deed that the trustees can perform any act with reference to the trust property or fund, and in executing these powers he must pursue them or his acts will be void. *Equitable Trust Co. v. Fisher,* 106 Ill. 195; *Irish v. Antioch College,* 126 Ill. 483; Elliott on Contracts, vol. 1, sec. 509.

Following these rules, do the trust deeds, by their exact language, or by terms used in the deeds, imply that the trustees should have power to consent to a lease, with an extended term? It is true that the general rule is that a lease executed after the mortgage by the mortgagor in possession, without privity of the mortgagee, as contended by appellee, does not render the lessee the tenant of the mortgagee, unless the tenant has attorned to the mortgagee. *Bartlett v. Hitchcock,* 10 Ill. App. 87; *Reed v. Bartlett,* 9 Ill. App. 267, and other cases. But the question in this case is whether this lease was executed with the consent of the trustees and whether such trustees were empowered to grant such consent. This is not a case of a dry trust, where the trustees have no duties to perform, but a trust with active duties to perform, and the deed of the mortgagor authorizes and the *cestui que trust* consent that the trustees may employ clerks, assistants and attorneys to carry out the terms of the trust. It is elementary that this was an active trust and it was understood by all parties that the trustees were to devote their time and energy actively, first to use the proceeds of these bonds to construct the property and afterwards to conserve the earnings to apply upon the indebtedness. There are two funds provided for in these deeds out of which, either or both, the debt is to be paid. The deeds convey the real estate as one part of the security. In a later clause and as "a further and collateral security" for the payment of the first mortgage bonds, the mortgagor conveys to the trustees, for a further consideration, paid by said trustees, *"all rents* and *claims for rents* and of any part

of the same which may become payable or which it may or shall have at any time while any of the said first mortgage bonds remain unpaid.'' A further special provision is made as to the method of receipt and distribution of these rents from lease. The deed recites: ''The moneys received by said trustees for rents assigned to them by said Hotel Company and *from and on account* of the lease or leases of said premises,'' etc.

What is meant by the term ''claims for rent,'' and ''moneys from or on account of the lease or leases''? It seems to have been understood by all parties that the property would have to be leased and rented and that leases would have to be executed to secure the income. This seems to have been an additional method provided by both parties for collecting the debt. It did not abate to any extent the lien of the mortgage upon the land, but it did divide the security into two subject-matters and placed the trustees in charge with ample power to collect the indebtedness. The deed in so many words empowers the trustees to collect the indebtedness and to bring suit, for the bondholders, to foreclose. The ''claims for rent'' as the term is used and in connection with the terms ''lease'' and ''leases'' can have no other construction than present and future right to collect rents from leases made by the mortgagor. The mortgagor in conveying the fee, conveyed the entire estate, including any term of years, and in case such a mortgage is made, without any stipulation as to enforcing the debt against a different interest, there are well-known rules of procedure that would cut off a lease made by the mortgagor, without privity with the mortgagee, but under the well-known rule that a person may do as he likes with his own so long as he does not violate the law, we know of no reason why mortgagor and mortgagee may not, in the execution of the mortgage, divide the estate into as many strips, pieces or parcels as they see

fit, and provide the manner the mortgagee may or must pursue to collect his debt. If there were minerals in the land the mortgagor could consent to an immediate opening of mines and provide for a method in such manner for the payment of the debt, and so far as the mortgagee pursued this special remedy he would be bound by the relations he had voluntarily entered into. In entering into the lease with appellant, under the testimony of the trustees, the term was extended because it was reasonably impossible to lease the premises except on a term. This situation must have been understood, according to the terms of the trust deeds, in which mortgagor and mortgagee provided for assigning claims for rent growing out of leases and an active trustee was selected to manage this part of the business in behalf of the bondholders.

In this case the mortgagor in the deed specifically reserved the right to assign, as collateral security, claims for rent which may become payable or which the mortgagor may have at any time and the right to assign, assumes a right to accept in a proper case and the bondholders, through their trustees, to collect, having consented to and accepted a term lease from the appellant, such part of the estate is separated and detached from the remainder of the fee, and the lease therefor is not subject to cancellation upon foreclosure. The interests must be sold separately. The securing of appellant's lease is presumed to have been in the interest of the bondholders (*Gibson v. Rees*, 50 Ill. 383; *Chicago Title & Trust Co. v. Smith*, 158 Ill. 425), and there has not been even an attempt in this case by the bondholders, or otherwise, to rebut the presumption and the attorney for the bondholders testified that at the time the lease was executed it was decided that "the best interest of all parties would be subserved if the hotel could be kept running as a 'going proposition.'"

It has been held that where a trustee has acted in good faith in a matter pertaining to the trust, and it is evident, from the instrument creating the trust, that it was intended to clothe him with a large discretionary power in the discharge of his duties, and it does not clearly appear that he has transcended them, courts of equity are not inclined to disturb or unsettle an important business transaction thus entered into by him, to the detriment of third parties who have acted in equally good faith. *Starr v. Moulton,* 97 Ill. 525; *Ely v. Pike,* 115 Ill. App. 284. This rule, in the opinion of this court, applies aptly to the facts in this case. The title in fee of this property was in the trustees. The title of a trustee is commensurate with the powers given and the duties imposed upon the trustee. *Security Ins. Co. v. Kuhn,* 207 Ill. 171. The power to accept, as collateral security, claims for rent, and all rent which may become payable, involves a leasing of the premises for a term and the appellees, trustees, were acting clearly within the express terms of the trust deeds when they approved and accepted the lease of appellant, in question, and consented to the provisions of clause 27 of the lease.

Counsel for appellant urge the subject of estoppel in this case and cite numerous cases and it clearly appears that many of the bondholders knew of the terms of the lease and for over eight years took no action either to foreclose or to notify appellant of their claims in the premises. We do not deem it necessary to pass upon that question in this case. The decree should be modified to provide for a sale of said premises, subject to the lease of appellant, which, so far as this record appears, is a valid and binding lease, and the title of appellees, by assignment, in and to said lease should be confirmed until the indebtedness found by said decree to be due and owing to appellees, trustees, from Gem City Hotel Company, mortgagor, has been fully paid, and such lease, by assignment in the

trustees' hands, may be disposed of or retained and collected as equity may require.

*Reversed and remanded with directions.*