Ira M. Cobe, Appellee, v. Frederick H. Bartlett, Appellant.

### Gen. No. 20,332.

1. VENDOR AND PURCHASER, § 16*—*what is option contract.* A contract whereby a plaintiff was under no obligation to sell, but the defendants were under obligations to buy certain premises if acquired through foreclosure of a trust deed, is free from ambiguity and uncertainty, and is an option contract to sell in the event of the happening of the condition.

2. VENDOR AND PURCHASER, § 65*—*when contract not ambiguous.* Under a contract whereby a plaintiff acquiring premises through foreclosure of a trust deed was to sell the same to the defendant, there was no ambiguity as to the subject-matter of the purchase, the term "premises" being usually used to signify land and its appurtenances.

3. VENDOR AND PURCHASER, § 65*—*when vendor has no title to convey.* Where a contract provided that a plaintiff was to sell certain premises if acquired under a trust deed, and such plaintiff had no title to the premises as against the mortgagor or his assigns or grantees, but only took a master's deed under foreclosure of a second trust deed, he had no title to the premises and the deed tendered by such plaintiff would have conveyed no title.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

4. MORTGAGES, § 96*—*what is interest of mortgagee.* The fee title held by a mortgagee is in the nature of a base or determinable fee measured by the mortgage debt, and when paid the mortgagee's title is extinguished by operation of law.

Appeal from the Municipal Court of Chicago; the Hon. JAMES C. MARTIN, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1914. Reversed with finding of facts. Opinion filed January 26, 1915. Rehearing denied February 6, 1915. *Certiorari* allowed by Supreme Court.

VAIL & VETTE, for appellant.

FOREMAN, LEVIN & ROBERTSON, for appellee.

MR. JUSTICE SMITH delivered the opinion of the court.

This action was brought by Ira M. Cobe against Frederick H. Bartlett and Clinton S. Woolfolk to recover the alleged loss and damages suffered by the plaintiff by reason of the failure on the part of defendants to perform their obligations under a written contract between the parties. Woolfolk died during the trial and the suit proceeded against Bartlett alone.

The action was tried before the court without a jury. The court found the issues in favor of the plaintiff and entered judgment against Bartlett for $25,144.14.

The parties will be referred to in this opinion as plaintiff and defendant, as known in the trial court.

A stipulation covering the material and controlling facts was made in the trial court and hence only questions of law are presented and argued on this appeal.

The contract which forms the basis of the action was in writing as follows:

"THIS AGREEMENT, made and entered into this 27th day of November, A. D. 1905, by and between Frederick H. Bartlett and Clinton S. Woolfolk, parties of the first part, and Ira M. Cobe, party of the second part, WITNESSETH:

THAT WHEREAS, the parties of the first part have sold to the party of the second part a certain principal note

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

of twenty thousand dollars ($20,000) dated April 3, 1905, payable on or before five (5) years after date, with interest at the rate of five (5) per cent. per annum, payable semi-annually, together with nine (9) interest coupons for the sum of five hundred dollars ($500) each; all executed by Benjamin H. Wallace to the order of himself and by him endorsed, and secured by trust deed dated April 3, 1905, from the said Benjamin H. Wallace and Dollie F. Wallace, his wife, to the Chicago Title & Trust Company, trustee, conveying lot nine (9) in Whitbeck's Subdivision of the east half (½) of block seventy-nine (79) in the Canal Trustees' Subdivision of the west half (½) of section twenty-seven (27), township thirty-nine (39) north, range fourteen (14), east of the Third Principal Meridian, Cook County, Illinois; said trust deed having been recorded in the recorder's office of Cook County, Illinois, on July 6, 1905, as Document No. 3,720,530.

Now THEREFORE, in consideration of the sum of thirty-three thousand five hundred dollars ($33,500), and as one of the terms of the above mentioned sale, the said parties of the first part agree, in the event of the foreclosure of the said trust deed and the said party of the second part acquiring the said premises, as described therein, through foreclosure for the sum not exceeding the actual amount due under said notes and trust deed, as found by the decree, to purchase the said premises from the said party of the second part immediately upon the expiration of the period of redemption under said foreclosure, and to pay the said party of the second part for said premises the amount which would be required to redeem the said premises under said foreclosure on the last day of said period of redemption, together with any additional charge for master's deed, etc., but excluding any sum which may be allowed in said foreclosure proceeding for attorneys' or solicitors' fees.

IN WITNESS WHEREOF, the said parties have hereunto set their hands and seals the day and year first above written.

CLINTON S. WOOLFOLK, [SEAL.]

FREDERICK H. BARTLETT,                [SEAL.]
NORTHERN LIQUIDATION COMPANY,         [SEAL.]
By WM. B. WALRATH, President.''

From the uncontroverted facts it appears that in 1905 the Northern Liquidation Company purchased the premises described in the above contract, known as Beveridge building property, from the Prudential Life Insurance Company of America, then owner of the property. The sale was negotiated through the defendant, Bartlett. The title was taken in the name of Benjamin H. Wallace. Wallace gave his note to the Prudential Life Insurance Company of America, secured by a mortgage on the above described premises, for $60,000, the unpaid part of the purchase price.

On the same date Wallace made another note for $20,000 with interest notes, payable to his order and by him indorsed, and to secure the same he, with his wife, executed a trust deed on the premises to the Chicago Title & Trust Company as trustee, and subject to the above mentioned $60,000 first mortgage. Each of the principal notes was due in five years from date.

The Prudential Life Insurance Company held its paper until it matured, and on May 21, 1910, filed its bill in the Circuit Court of Cook county to foreclose, making defendants all parties having any interest as owners of the equity of redemption, or subsequent incumbrancers, including the Assets Realization Company, the then owner of the $20,000 note and trust deed securing it. In that proceeding Samuel R. Jenkins was appointed receiver, November 19, 1910, under an order directing him, among other things, to pay out of the proceeds of rents, etc., "expense of the receiver theretofore appointed in the cause entitled *Assets Realization Company v. Benjamin H. Wallace, et al.*," a foreclosure suit then pending to foreclose the second mortgage above mentioned for $20,000.

A decree of foreclosure was entered in the foreclosure proceeding under the first mortgage of $60,000, and on November 26, 1910, the master sold the prop-

erty and the Prudential Life Insurance Company pur-
chased it at the master's sale for $65,500. On the
same day a deficiency decree for $2,266.14 was entered
for the balance due under the first mortgage. No re-
demption having been made by the defendants in the
foreclosure proceedings or others, the master made
a deed of the premises to the Prudential Life Insur-
ance Company February 28, 1912.

It appears that the note and trust deed securing the
$20,000 was held by the Northern Liquidation Com-
pany until November 27, 1905, at which time the note
with some other property was sold to plaintiff, Ira M.
Cobe, and the $20,000 proceeds of the sale went to the
Northern Liquidation Company. At that date the con-
tract sued on was executed, evidencing the sale of the
$20,000 note and was signed by Woolfolk and Bartlett
individually, and by the Northern Liquidation Com-
pany by W. B. Walrath, its President. The purchase
price for the note and other property was paid by the
Assets Realization Company's check, and no other pay-
ment was made by Cobe. As one of the terms of the
sale of the note and trust deed, Cobe, Woolfolk and
Bartlett agreed on certain conditions to purchase the
real estate described in the trust deed from Cobe in
accordance with the terms of the written contract
above set forth.

Cobe transferred the $20,000 note to the Assets Real-
ization Company, and on April 12, 1910, that company
filed its bill to foreclose the trust deed. On May 10,
1910, Jenkins was appointed receiver under that bill,
and the taxes for the year 1909, not having been paid,
under an order of court September 2, 1910, he, as re-
ceiver, issued a receiver's certificate, of date Septem-
ber 10, 1910, for $1,118.82, and with the proceeds of the
sale of the certificate, paid the taxes.

The Assets Realization Company obtained a decree
September 30, 1910, and on October 28, 1910, the prem-
ises were sold by the master to Hugo M. Friend, who

purchased for Cobe. Friend assigned the certificate of sale to Cobe. The master reported on October 31, 1910, that he had sold the premises for $23,350; that he had paid the Assets Realization Company $21,-146.98, and that the amount realized was not sufficient to pay the amount found to be due by the decree, and that there was a deficiency due the Assets Realization Company of $53.66, for which Wallace was liable. This report was approved by the court November 4, 1910, and a deficiency judgment of $53.66 against Wallace was entered, and complainant was awarded execution therefor.

The receiver Jenkins remained in possession of the property until the right of redemption expired under the foreclosure sale of the Prudential Life Insurance Company case, February 27, 1912. He did not pay either the deficiency judgment or the receiver's certificate for $1,118.82 still outstanding. No redemption in either case was made. The year for redemption by defendants from the sale to the Prudential Life Insurance Company expired November 26, 1911, and for judgment creditors February 27, 1912.

The fifteen months' period for redemption expired on the Assets Realization Company's sale January 29, 1912, and on January 30, 1912, Cobe obtained a deed from the master to himself which he recorded February 1, 1912. On January 30, 1912, Cobe and wife signed and acknowledged a deed purporting to convey the premises to Bartlett and Woolfolk, and on the same date, through his attorney who had with him the original contract, the master's deed to Cobe, the deed from Cobe and wife to Bartlett and Woolfolk, and a certificate from the master showing an amount due, said to Bartlett he would deliver the papers on payment of the amount called for by the contract. Bartlett referred him to his attorney. On the morning of January 31, 1912, Cobe's attorney called on Woolfolk and made the same offer and about noon of the same day

saw the attorney for Bartlett who informed him that
Bartlett was in negotiation with the Prudential Life
Insurance Company about acquiring its interest and
that he would not say that they would pay the money.

On February 20, 1912, Bartlett, through his attorney,
tendered to the attorney for the Assets Realization
Company the amount due on the deficiency judgment
of that company which was not accepted. On the day
following, the attorneys for the parties went into court
and an order was entered under which Bartlett's at-
torney paid the deficiency judgment of the Assets Real-
ization Company to the clerk of the court.

On February 20, 1912, a contract was executed
whereby Bartlett agreed to purchase from the Pruden-
tial Life Insurance Company the property in question
if it obtained a deed from the master in its foreclos-
ure suit. Cobe, having been informed of this contract,
on February 21, 1912, mailed to Bartlett the deed of
himself and wife to Bartlett and Woolfolk mentioned
above in a letter which stated that he was delivering
therewith unconditional deed of the premises, "the
title to which now stands in my name upon the rec-
ords, and will be glad to receive your check for
$23,112.50." This letter was referred by Bartlett to
his attorney who replied by mail, under date of Febru-
ary 23, 1912, the intervening day being a holiday, that
Bartlett felt he was under no obligation to accept the
deed or pay the $23,112.50, and declined to do so and
returned the deed. Thereupon, on April 29, 1912, this
action was brought against Bartlett and Woolfolk.

Defendants' affidavit of merits denied that plaintiff
acquired the title to the premises, denied the delivery
of the deed, alleged that the master's deed to plaintiff
did not convey the premises or any interest therein or
title thereto, and set up the sale under the foreclosure
decree on the first mortgage and failure of plaintiff to
redeem therefrom.

The first, and we may say the controlling, question
presented for consideration is the meaning and legal

effect of the contract of November 27, 1905, between Bartlett and Woolfolk on the one hand and Cobe on the other. In our opinion it is an option on the part of the plaintiff to sell the real estate described therein to Bartlett and Woolfolk in the event of the happening of the conditions precedent mentioned therein. *Adams v. Peabody Coal Co.*, 230 Ill. 469. Plaintiff was under no obligation to sell but the defendants were under obligation "to purchase the said premises" from plaintiff subject to the conditions precedent specified, namely the "acquiring the said premises" by plaintiff through a "foreclosure of the said trust deed." The purchase was to be made "immediately upon the expiration of the period of redemption under said foreclosure." The contract is, we think, simple, clear and without ambiguity or uncertainty. There are no contradictory terms or provisions in it. There is, therefore, no ground for resorting to any contemporaneous construction which the parties may have given to the contract by their acts at the time, or during the execution of the contract, for the purpose of construing it or to enable the court to ascertain the real intention of the parties. The legal effect of the agreement must be enforced. *Walker v. Tucker*, 70 Ill. 527; *Bolton v. Huling*, 195 Ill. 384, 394; *Railroad Co. v. Trimble*, 10 Wall. (U. S.) 367, 377.

It is contended by the plaintiff that he "acquired the said premises as described therein (the second trust deed), through foreclosure;" that the "premises as described therein" under the circumstances of this case, meant the title to the premises subject to the first lien and its incidents. In other words, it was not the intention that Cobe should pay off the first lien of $60,000 in order to sell the premises to defendants for the amount due under the second lien.

The defendants agreed, (1) in the event of the foreclosure of the second trust deed, and (2) the plaintiff acquiring the premises through the foreclosure, "to

purchase the said premises from the said party of the second part (Cobe) * * * and to pay the party of the second part for said premises the amount which would be required to redeem the said premises under said foreclosure on the last day of said period of redemption," etc.

There is no ambiguity as to the subject-matter of the purchase, or what was to be acquired by Cobe. He was to acquire the premises through a foreclosure of the trust deed, and that same thing was to be the subject-matter of the sale to defendants. In common parlance, the term "premises" is used to signify land with its appurtenances; and its usual and appropriate meaning in conveyances and contracts for the purchase and sale of real estate is the thing demised or granted by the deed. 22 Am. & Eng. Ency. of Law, 1175. That is the meaning of the word as used in the contract under consideration. Defendants were selling the paper to get money on it. They obtained no assurance by the contract that plaintiff would acquire the property, or, if he did, that he would sell it to them. The contract was a mere option in plaintiff's favor. It gave Bartlett and Woolfolk no advantage or benefit, and as it was neither an advantage nor benefit to them, it must be inferred they did not ask for it. But it was a thing that might prove to be a benefit or advantage to Cobe, and, therefore, a situation that he was seeking to impose upon defendants. Bartlett and Woolfolk were selling a $20,000 note for $17,000. They were selling the paper for money, not as a means of acquiring the property, for they transferred to Cobe with the notes, as an incident thereto, the trust deed which gave the right to redeem from the first mortgage by taking up the indebtedness secured by the first mortgage after its maturity and including it with what was due on the notes and trust deed purchased by him and foreclosure for the whole amount, or hold it as a lien upon the premises. This would have enabled

plaintiff to acquire the premises and comply with the condition of his contract. This was his plain and effective course of procedure. But, instead of redeeming from the first mortgage, or taking it up and holding it, he allowed the foreclosure suit of the Prudential Life Insurance Company to ripen into a decree against the Assets Realization Company, the owner of the notes and trust deed, a defendant therein, under which decree a sale was made of the premises November 26, 1910. Cobe bought the premises under a decree entered in the Assets Realization Company case on October 28, 1910. Any right which he obtained by that purchase was such only as came through the Assets Realization Company, and was foreclosed by the decree in the Prudential Life Insurance Company case. No redemption was made by any defendant or by Cobe from the sale under the first mortgage within the year given by statute and the decree, and their rights were extinguished. This was not acquiring title to the premises subject to the first lien and its incidents, according to the construction of the contract contended for by plaintiff. On the contrary, it was permitting all rights, title and equity of redemption in the Assets Realization Company or plaintiff to be foreclosed and extinguished, so that the plaintiff had no right in or title to the premises to convey to defendants. If, then, it be conceded that the contract is to be construed as plaintiff contends it should be, and further that the intention expressed therein is that Cobe should convey a title subject to the first mortgage, the plaintiff's action is not supported thereby, for, according to the record, he never had even such a title to convey. The right of redemption from the sale to the Prudential Life Insurance Company under the decree of foreclosure of the first mortgage expired on November 26, 1911, as to everybody except judgment creditors. Cobe received his master's deed in the foreclosure of the second trust deed on January 30, 1912. He took noth-

ing therefore under the deed. *Cook v. City of Chicago,* 57 Ill. 268. He had no title to the premises to convey to Bartlett and Woolfolk when he tendered a deed to them January 30 and 31, 1912. He had not performed or fulfilled the condition precedent to his right to sell and convey to defendants, namely, had not acquired the premises through foreclosure of the second trust deed, nor the right to receive from them the amount which would be required to redeem the premises under the foreclosure on the last day of the period of redemption, excluding, etc.

Plaintiff contends, however, that after the expiration of the fifteen months' period of redemption under the second mortgage foreclosure and the issuance of the master's deed thereunder to Cobe, and until the expiration of the fifteen months' period of redemption under the first mortgage foreclosure and the issuance of master's deed thereunder, title to the premises was in Cobe. *Lightcap v. Bradley,* 186 Ill. 510; *Seligman v. Laubheimer,* 58 Ill. 124; *Ogle v. Koerner,* 140 Ill. 170; and *Davis v. Dale,* 150 Ill. 239, and other cases are cited as sustaining the contention.

This contention is, we think, fully answered in what we have said above. The claim is rather specious than sound. That it is not sound is admitted in argument by Cobe, that "it is apparent, therefore, that the value of the estate conveyed by Cobe to Bartlett and Woolfolk (in the deed tendered but not accepted) was nothing," the premises being in the possession of the receiver for the purpose of enforcing the equitable lien of the two incumbrances upon the rents and profits accruing during the redemption period, and the receiver never having collected money enough to satisfy either deficiency decree. It seems to us idle to claim that Cobe during that period had title to the premises, or that whatever title he had was such a title as was contemplated by the parties to the contract. True, Cobe had whatever title remained in Wallace subject

to the title of the Prudential Life Insurance Company as mortgagee, but Wallace's title and Cobe's title under him had been foreclosed and cut off by the decree in the foreclosure of the first mortgage and the lapse of the redemption period in which Wallace could redeem. The debt secured by the first mortgage was not paid on February 28, 1912. The Prudential Life Insurance Company had a deficiency decree for $2,266.14. It was in possession of the property through a receiver for the purpose of collecting its debt, not as purchaser at the sale or by virtue of the decree, but under and by virtue of the mortgage which was still alive and in force for that purpose. As held in *Ware v. Schintz,* 190 Ill. 189, at page 193: "The relation of plaintiff and defendant to each other is that of mortgagor and mortgagee, and under the repeated rulings of this court a mortgagee, as against the mortgagor, is held, as in England, in law, to be the owner of the fee, having the *jus in re* as well as *ad rem,* and entitled to all the rights and remedies which the law gives to such owner, and may, after condition broken, maintain ejectment against the mortgagor. The mortgagor or his assignee, however, is the legal owner of the mortgaged estate as against all persons excepting the mortgagee or his assigns. *Delahay v. Clement,* 3 Scam. 201; *Vansant v. Allmon,* 23 Ill. 30; *Carroll v. Ballance,* 26 id. 9; *Oldham v. Pfleger,* 84 id. 102; *Fountain v. Bookstaver,* 141 id. 461; *Esker v. Heffernan,* 159 id. 38. The fee title held by the mortgagee is in the nature of a base or determinable fee. The term of its existence is measured by that of the mortgage debt. When the latter is paid or becomes barred by the statute of limitations, the mortgagee's title is extinguished by operation of law. *Pollock v. Maison,* 41 Ill. 516; *Harris v. Mills,* 28 id. 44; *Gibson v. Rees,* 50 id. 383; *Barrett v. Hinckley,* 124 id. 32; *Lightcap v. Bradley,* 186 id. 510. Until it is extinguished the legal title is in the mortgagee for the purpose of obtaining satisfaction of his debt." See also *Owsley v. Neeves,* 179 Ill. App. 61.

As against the mortgagor or his assigns, grantees and those claiming under him, the title to the premises during the period mentioned in Cobe's contention was in the Prudential Life Insurance Company and not in Cobe, and the deed tendered by Cobe to Bartlett and Woolfolk, if accepted, would have conveyed no title.

The finding and judgment of the trial court was erroneous, and the judgment is reversed.

*Reversed with finding of facts.*

Finding of facts.—The court finds that the plaintiff, Ira M. Cobe, did not acquire the premises described in the contract sued on through foreclosure of the trust deed described in the contract and did not perform or fulfil the conditions of the contract to be performed and fulfilled by him, and the defendant, Frederick H. Bartlett, appellant, is not indebted to the plaintiff Cobe under the contract sued on.